1  K. GREG PETERSON, ESQ. (SBN 118287)
   K. GREG PETERSON, A PROFESSIONAL CORPORATION
2  455 Capitol Mall, Suite 325
   Sacramento, CA  95814
3  Telephone:    (916) 443-3010
   Facsimile:    (916) 492-2680
4  Email:        greg@kgregpeterson.com

5  Attorney for Garnishee

6

7

8               IN THE UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,                Case No.:  2:21-mc-00143-TLN-CKD

12              Plaintiff,                   ACKNOWLEDGMENT OF SERVICE AND
                                            ANSWER OF GARNISHEE
13              v.
                                            Criminal Case No.: 2:11-cr-00234-TLN
14 STEVEN ZINNEL,

15              Defendant and Judgment Debtor.

16

17 DAVID ZINNEL, SUCCESSOR TRUSTEE
   OF THE CASTANA TRUST, DATED
18 MARCH 4, 2009,

19              Garnishee.

20

21     I, _David Zinnel, Trustee_____, declare (fill in as applicable):

22     1.     I am the Garnishee, a partner of the Garnishee, or an authorized representative of the

23 Garnishee.

24     2.     On _06/15/2021_____, Garnishee acknowledges receipt of the Writ of Continuing

25 Garnishment.

26     3.     As of the date of service, the Garnishee has custody, control, or possession of the following

27 property of the Castana Trust, ~~in which Steven Zinnel, Judgment Debtor, maintains an interest,~~ as described

28 below:

ACKNOWLEDGMENT OF SERVICE AND ANSWER                 1

| Description of Property (Include Account or Safe Deposit Box Numbers) | Approximate Value | Description of Debtor's Interest in Property |
|---|---|---|
| SEE ATTACHMENT - SECTION 3 | | |
| | | |
| | | |
| | | |

4.   Garnishee anticipates owing to the Judgment Debtor in the future the following amounts:

| Amount | Estimate Date or Period Due |
|---|---|
| SEE ATTACHMENT - SECTION 4 | |
| | |
| | |
| | |

5.   List any other party who may have an interest in the property described above:

| Description of Property | Name and Address |
|---|---|
| SEE ATTACHMENT - SECTION 5 | |
| | |
| | |
| | |

6.   Garnishee denies holding any property or does not expect to hold any property in the future that is subject to this Writ of Garnishment – (Explain below):

SEE ATTACHMENT - SECTION 6

7.   Garnishee must file with the Court this **original** Acknowledgment of Service and Answer of Garnishee at the following address:

United States District Court
Clerk of the Court
501 I Street, Room 4-200
Sacramento, CA 95814

ACKNOWLEDGMENT OF SERVICE AND ANSWER

2

1    8.    The Garnishee will serve a copy of this Acknowledgment of Service and Answer of

2  Garnishee by first class mail to the Judgment Debtor and the attorney for the United States:

3  Addressees

4        STEVEN ZINNEL, 66138-097
        Federal Correctional Institution
5        FPC Sheridan
        P.O. Box 6000
6        Sheridan, OR 97378-6000

7        United States Attorney's Office
        LYNN TRINKA ERNCE
8        Assistant United States Attorney
        501 I Street, Suite 10-100
9        Sacramento, CA 95814

10    9.    I hereby execute this Acknowledgment of Service and Answer of Garnishee and declare

11  under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information

12  and belief.

13  Dated: 6/18/2021

14                                         David Zinnel, Trustee
                                         Name of Garnishee (Printed)
15
                                         Signature of Declarant*
16                                         David Zinnel

17                                         Printed Name of Declarant
                                         Successor Trustee of the Castana Trust
18                                         Full Title of Declarant
                                         c/o K. Greg Peterson, 455 Capitol Mall, Suite 325, Sacramento, CA 95814
19                                         Full Address
20  (*Declarant: Person completing this form)    (916) 443-3010

21                                         Telephone Number:

22

23

24

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2      The undersigned hereby certifies that he/she is a person of such age and discretion to be

3 competent to serve papers.

4      That on <u>June 17, 2021</u>, I served a copy of the attached Acknowledgement

5 of Service and Answer of Garnishee by placing copies in a postage paid envelope addressed to the

6 addressees shown below, which are their last known addresses, and by depositing the envelope and

7 contents in the United States mail at <u>Sacramento, California</u>.

8 <u>Addressees</u>

9      STEVEN ZINNEL, 66138-097
       Federal Correctional Institution

10     FPC Sheridan
       P.O. Box 6000

11     Sheridan, OR 97378-6000

12     United States Attorney's Office
       LYNN TRINKA ERNCE

13     Assistant United States Attorney
       501 I Street, Suite 10-100

14     Sacramento, CA 95814

15

16      By: _____

17           Tracy Fonti

18

19

20

21

22

23

24

25

26

27

28

ACKNOWLEDGMENT OF SERVICE AND ANSWER                    4

**Attachment to Acknowledgment of Service and Answer of Garnishee of David Zinnel, Successor Trustee of The Castana Trust**

David Zinnel, Successor Trustee of the Castana Trust, the Garnishee herein, in conjunction with his Acknowledgment of Service and Answer of Garnishee, herewith further states as follows:

**Section 3**.

a. <u>Real Property Assets</u>.

As of the date of his signature to this Answer, the following real property assets are property of the Castana Trust and within his custody, control or possession:

   i.  2428 Glenfaire Drive, Rancho Cordova, CA 95670; and
  ii.  1302 Emerald Street, Onawa, IA 51040.

A true and correct copy of the grant deed showing title to the Glenfaire Drive property vested in the name of the Castana Trust is attached hereto as **Exhibit A**. [Title to the Emerald Street property is also held in the name of the Castana Trust but a copy of the grant deed is not currently available.]

The approximate values of the two above-described real properties, as determined by previous written appraisal, are as follows:

 iii.  2428 Glenfaire - $307,000 (a/o 9.16.2020); and
 iv.  1302 Emerald - $157,000 (a/o 10.28.2020).
 b.  <u>TD Ameritrade IRA account (*0613)</u>.

As of the date of his signature to this Answer, the following personal property is not within his custody, control or possession:

   i.  TD Ameritrade IRA account (*0613).

According to the Acknowledgment of Service and Answer of Garnishee TD Ameritrade Clearing, Inc. in Case No. 2:21-cr-00234-TLN-AC [ECF 8] the value of the account, including cash and securities as of April 13, 2021, is shown as approximately $1,458,451.66, and the account is still held in the name of Ardith Ferris, who is now deceased.

David Zinnel, the Successor Trustee of the Castana Trust and Garnishee herein contends the TD Ameritrade IRA account (*0613) should be declared an asset of the Castana Trust and that the TD Ameritrade account designation of Steve Zinnel as the Primary Beneficiary is invalid and inconsistent with the expressed intent of the Settlor, Ardith Ferris. Whether or not the TD Ameritrade IRA account (*0613) is an asset of the Castana Trust, and by extension the questioned validity of the designation of Steve Zinnel as the Primary Beneficiary of said account, are questions now pending before the Sacramento

Probate Court and are set to be decided at a hearing and Department 129 of said Court (Hon. Joginder Dhillon) on November 3, 2021 at 9:00 AM. See the attached Notice of Hearing and Petition filed by Garnishee, David Zinnel, Successor Trustee of the Castana Trust, true and correct copies of which are attached hereto (collectively) has **Exhibit B**.

    c.  Interest of Steve Zinnel, Judgment Debtor.

As of the date of David Zinnel's signature to this Answer, Steve Zinnel, the Judgment Debtor, does not have any legal right to custody, control or possession of the above-described property of the Castana Trust or to the TD Ameritrade IRA account (*0613), for the following reasons:

    i.  Background Facts.

The interest of the USA in the assets of the Castana Trust commenced back in April of 2020 when it served a subpoena requesting various business records on David Zinnel in connection with his actions as Successor Trustee of the Castana Trust. A true and correct copy of the April 6, 2020 Subpoena issued in Criminal Case No. 2:11-cr-234-TLN is attached hereto as **Exhibit C**.

Through counsel the parties eventually entered into an agreement for David Zinnel to voluntarily exchange documents and information including the production of appraisals for the two real properties and a negotiated process by which the USA sought to attach Steven Zinnel's residuary interest in all Castana Trust assets. It was informally agreed by the parties that after preparing the trust tax returns David Zinnel would file a petition for a final accounting, requesting approval of a settlement with the USA and termination of the Castana Trust.

While preparing the tax returns for the Castana Trust, David Zinnel came across certain records that gave him reason to believe that there might be an IRA account or accounts belonging to Ardith Ferris that were previously unknown to him. His efforts to obtain documents and information from the financial institutions in question (Morgan Stanley and TD Ameritrade) had proved fruitless. Accordingly, and on December 21, 2020, counsel for David Zinnel wrote AUSA Kurt Didier and, in the interest of full and complete transparency, provided information and documents concerning the suspected IRA accounts and asked the USA to subpoena these records.

On February 25, 2021, AUSA Kurt Didier emailed counsel for David Zinnel and admitted "the United States appreciates Mr. David Zinnel's cooperation."' AUSA Didier's email also included courtesy copies of the subpoenas and assurances that the United States "will not levy against assets for which it has no legal claim." On March 3, 2021, AUSA Kurt Didier requested the Castana Trust's TIN in order to obtain Morgan Stanley's compliance with its subpoena. David Zinnel's counsel responded the next day with the requested information. True and correct copies of the above referenced email exchanges are attached hereto as **Exhibit D.**

In summary, the USA would never have known of the existence of the TD Ameritrade IRA account (*0613) had not been for the open willingness of David Zinnel to cooperate and disclose information he had concerning the same.

ii.   Important Provisions of the Castana Trust.

David Zinnel, as the Successor Trustee of the Castana Trust, is responsible for holding, administering and distributing the assets of the Castana Trust estate.  Sec. 2.1.[1]

There are no specific gifts provided for in the Castana Trust.  Sec. 5.3.  Therefore, on the death of the Settlor, Ardith Ferris, the Trustee is to divide and distribute the remaining trust estate into equal shares "for each of the settlor's children who survive her."  Sec. 5.4.  The Trustee's powers include the ability to sell, divide and/or distribute trust property in cash, in kind or partly in cash and partly in kind.  Sec. 7.16.

However, in connection with the Trustee's directive to divide and distribute assets of the Castana Trust after the death of the Settlor, "*the trustee may, in the trustee's discretion, defer actual division or distribution for such reasonable period of time as is needed to effectively identify, take possession of, value and divide, and distribute the assets of the trust.*"  Sec. 5.2 (emph.added).   During this time the Settlor is to administer the Castana Trust assets "as a single administrative trust."  Sec. 5.2.

The Castana Trust also provides a spendthrift provision, by which the interests of the beneficiaries under the Castana Trust are expressly not subject to the claims of creditors, attachment, execution or other legal process "to the maximum extent permitted by law."  Sec. 6.1.  And while a beneficiary's interest may vest as of the date of death, this does not affect the Trustee's ability to delay division or distribution.  Sec. 5.2.

Finally, the Trustee is entitled to be compensated at a reasonable fee for his services from the assets of the Castana Trust.  Sec. 3.4.  See also Probate Code §15681.  Debts and expenses of the Castana Trust estate "shall be paid by the Trustee *from the trust estate.*"  Sec. 5.1 (emph.added).  "Debts and expenses" include "all costs, expenses of litigation, (and) counsel fees."  Sec. 8.5(b).  The Trustee may employ attorneys "and compensate them from the trust property."  Sec. 7.8(f).  The Trustee's powers also include prosecuting "any claim in favor of the trust" and prosecute *"at trust expense" any "actions, claims or proceedings of whatever kind for the protection of the trust property.*"  Sec. 7.8(n)&(o) (emph.added).

All questions concerning the validity, interpretation and administration of the Castana Trust are governed by California law.  Sec. 8.10.

iii.   Applicable California Law.

The Castana trust does not allow Steven Zinnel demand or to compel David Zinnel to make any distribution of income or principal, and therefore because of the spendthrift

---

[1] All references are to Sections within the Castana Trust.  See Case No. 2:21-mc-00098-TLN-AC, ECF 45, Exhibit C thereto.

provision under Section 6.1, his interest generally is not subject to enforcement of a money judgment until the distribution is "paid to the beneficiary."  See Probate Code §§15300 & 15301(a).

Section 15305.5 of the California Probate Code contains a specific provision applicable to restitution judgments imposed against defendants convicted of a felony.  Subsection (b) is not applicable because, again, Steven Zinnel has no right under the trust to compel David Zinnel as the Successor Trustee to pay him any income or principal.

Subsection (c) of Probate Code Section 15305.5 provides as follows:

> "Whether or not the beneficiary has the right under the trust to compel the trustee to pay income or principal or both to or for the benefit of the beneficiary, the court may, to the extent that the court determines it is equitable and reasonable under the circumstances of the particular case, order the trustee to satisfy all or part of the restitution judgment *out of all or part of future payments* that the trustee, *pursuant to the exercise of the trustee's discretion*, determines to make to or for the benefit of the beneficiary."

(emph. added).  See also *Young v. McCoy* (2007) 147 Cal.App.4th 1078 (held, denial of restitution judgment creditor's petition to compel trustee to invade trust assets to enforce restitution judgment against trust beneficiary was proper and in accord with the expressed intent of PC §15305.5(c).) In *Young v. McCoy* the trust beneficiary (Steven) was convicted of attempted murder and his victim (brother) obtained a $1.275 million restitution judgment against him that he sought to enforce against Steven's interest under his mother's trust. The Court refused the request finding "section 15305.5, subdivision (c) *unambiguously conferred no authority on the court* to order (the trustee) to distribute any funds to (the restitution judgment creditor)." *Id*. at pg. 1082 (emph. added). "The statute allows a court to direct any payments from a trust to a restitution judgment creditor *only after the trustee has first determined to make payments to the beneficiary* himself." *Id*. at pgs. 1082-1083 (emph. added).  Reemphasizing its point regarding Section 15305.5(c) Court stated:

> "…that statutory language clearly and unambiguously limits a court's power to ordering a trustee to satisfy all or part of a restitution judgment *only* from future payments of trust funds that the trustee first determines to make, 'pursuant to the exercise of the trustee's discretion.'"

*Id*. at pg. 1084 (emph. added).  "[T]he trust controls how much and how often money is paid out, the court does not." *Id*. at pg. 1085.

Here, again, the Castana Trust provides the Trustee with the discretion to withhold distribution of trust property under Section 5.2:

> "…*the trustee may, in the trustee's discretion, defer actual division or distribution for such reasonable period of time as is needed to effectively identify, take possession of, value and divide, and distribute the assets of the trust*."

Sec. 5.2 (emph.added).  In the Sacramento Probate Court action, David Zinnel is taking action to identify and take possession of property he believes rightly belongs to the Castana Trust. In addition, he is incurring expenses that he is allowed to deduct from the trust estate before making any distributions.  Secs. 5.1 & 7.8(f),(n)&(o).

The USA makes no claim that David Zinnel is abusing his discretion or failing to act in good faith in connection with his duties as Successor Trustee of the Castana Trust. On that point the Court in *Young v. McCoy* noted:

> "… a trustee's determination not to make future payments cannot be an abuse of discretion if it is clearly in keeping with the trustor's intent. Moreover, the actions of a trustee are presumed to be in good faith (citation omitted) and the burden is on the party challenging the action to show otherwise (citation omitted)."

*Id*. at pg. 1087.

Finally, because David Zinnel is entitled as a beneficiary to the other one half of the net value of the residuary assets of the trust, it would not be fair or equitable to divide the known Castana Trust assets at this time and force David Zinnel, alone and on behalf of the Castana Trust, to bear the burden and expense of these proceedings out of his eventual share of the Castana Trust.  After the November 3, 2021, hearing in the Sacramento Probate Court action, David Zinnel should know whether or not the TD Ameritrade IRA account (*0613) is an asset of the Castana Trust, and the necessary expenses of trust administration will likely also at that point be capable of being ascertained, for purposes of determining the net residuary value of the Castana Trust assets subject to distribution.

**Section 4**.

Until the Garnishment and Sacramento Probate Court proceedings concerning the TD Ameritrade IRA account (*0613), described above, are fully and finally resolved, and the allowable costs of administering the Castana Trust as described above have been determined and paid, it is not possible to determine the amount of the distributive residuary share that will be owing to Steven Zinnel, Judgment Debtor or when those funds will be due and owing to him.

**Section 5**.

Under Sec. 5.4(a) of the Castana Trust David Zinnel is entitled to one-half of the net residuary of the Castana Trust assets.  To the extent of its unpaid judgment for criminal monetary penalties forming the basis of these garnishment proceedings, the USA is a restitution judgment creditor of Steve Zinnel.

**Section 6**.

David Zinnel, Successor Trustee of the Castana Trust, may in the future hold the property consisting of the TD Ameritrade IRA account (*0613). The determination of the Sacramento Probate Court to be made on November 3, 2021 as to declaration of the TD

Ameritrade IRA account (*0613) as an asset of the Castana Trust, may give rise to substantial property that could in the future eventually become subject to this Writ of Garnishment.

EXHIBIT A

Sacramento County Recorder
Frederick B. Garcia, Clerk/Recorder
BOOK **20090310** PAGE **0757**

Check Number 1667
Tuesday, MAR 10, 2009 9:20:08 AM
Ttl Pd $14.00    Nbr-0005782255

KPO/36/1-2

RECORDING REQUESTED BY
Ardith Ferris

AND WHEN RECORDED MAIL TO

| | |
|---|---|
| Name | Ardith Ferris |
| Street | 2428 Glenfaire Dr. |
| City/State | Rancho Cordova, CA 95670 |

# GRANT DEED

THIS UNDERSIGNED GRANTOR DECLARES
City of Rancho Cordova

Documentary Transfer Tax is **$0.00**
Transfer under Revenue & Taxation Section 11930
Grantee is a Trust for the benefit of the Grantor

Conveyance Tax is **$0.00**
Parcel No. **058-0206-011**

_____
Declarant or Agent Determining Tax

I, ARDITH FERRIS, formerly known as Ardith Zinnel, an unmarried woman, grants to ARDITH LOUISE FERRIS, AS TRUSTEE OF THE CASTANA TRUST initially established March 4, 2009, that certain real property situated in the County of Sacramento, State of California, described as follows:

2428 Glenfaire Dr., Rancho Cordova, CA 95670 (APN 058-0206-011), as more particularly described as Lot 510, as shown on the "Plat of Glenfaire Unit No. 5", recorded in the office of the County recorder of Sacramento county, on July 18, 1963 in Book 72 of Maps, Map No. 8.

Executed on March 4, 2009, at Gold River, California.

_____
Ardith Ferris

**MAIL TAX DOCUMENTS TO PARTY DIRECTED ABOVE IN TOP LEFT CORNER OF INSTRUMENT**

## California All-Purpose Acknowledgment

State of California    )

                    ) SS

County of Calaveras )

On March 4, 2009, before me, Jayleyne Goltz, a notary public in and for the State of California, personally appeared Ardith Ferris, personally who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

J. JAYLEYNE GOLTZ
COMM. # 1831925
NOTARY PUBLIC • CALIFORNIA
CALAVERAS COUNTY
COMM. EXPIRES JAN. 18, 2013

EXHIBIT B

**BY FAX**

| | | | **DE-115/GC-015** |
|---|---|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY**   STATE BAR NUMBER: 118287

NAME: K. Greg Peterson, Esq.

FIRM NAME: K. Greg Peterson, A Professional Law Corporation

STREET ADDRESS: 455 Capitol Mall, Suite 325

CITY: Sacramento   STATE: CA   ZIP CODE: 95818

TELEPHONE NO.: 916-443-3010   FAX NO.: 916-492-2680

EMAIL ADDRESS: greg@kgregpeterson.com

ATTORNEY FOR (name):

**FOR COURT USE ONLY**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**

STREET ADDRESS: 3341 Power Inn Road

MAILING ADDRESS: 3341 Power Inn Road

CITY AND ZIP CODE: Sacramento, CA 95818

BRANCH NAME: William R. Ridgeway Family Relations Courthouse

☐ ESTATE OF (name):   ☒ IN THE MATTER OF (name):

THE CASTANA TRUST, DATED MARCH 4, 2009

☐ DECEDENT   ☒ TRUST   ☐ CONSERVATEE   ☐ MINOR

**NOTICE OF HEARING ON**
**PETITION TO DETERMINE CLAIM TO PROPERTY**

CASE NUMBER:
34-2016-00200990

---

*A petition has been filed asking the court to determine a claim to the property identified in 3, and a hearing on the petition has been set. Please refer to the petition for more information.*

*If you have a claim to the property described in 3, you may attend the hearing and object or respond to the petition. If you do not want to attend the hearing, you may also file a written response before the hearing.*

*If you do not respond to the petition or attend the hearing, the court may make orders affecting ownership of the property without your input.*

1. NOTICE is given that (name): DAVID ZINNEL
   *(fiduciary or representative capacity, if any):* Successor Trustee
   has filed a petition entitled *(state complete title):* Petition for Order Determining Title to Personal Property
   under Probate Code section 850 asking for a court order determining a claim or claims to the property described in 3.

2. A HEARING on the petition will be held as follows:

   **Hearing Date** → Date: 11/3/2021   Time: 9:00am   Name and address of court if different from above:
   Dept.: 129   Room:

3. The property that is the subject of the petition is *(describe each item of real or personal property; for real property—i.e., land or buildings—give the street address or, if none, describe the property's location and give the assessor's parcel number):*
   Rollover IRA Account (*0613) held by TD Ameritrade Clearing Inc. in the name of Ardith Ferris

☐ Continued on Attachment 3.

Check 4 only if the petition seeks the additional relief described.

4. ☐ In addition to seeking to recover the property described in 3, the petition also alleges and seeks relief for bad faith conduct, undue influence in bad faith, or elder or dependent adult financial abuse. The petition describes these allegations in detail. Based on the allegations, the petition seeks to recover twice the value of the property described in 3

   ☐ and requests that the court award attorney's fees and costs to the petitioner. (Prob. Code, § 859.)

---

**Requests for Accommodations**

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the hearing. Contact the clerk's office or go to *www.courts.ca.gov/forms* for *Request for Accommodations by Persons With Disabilities and Response* (form MC-410). (Civ. Code, § 54.8.)

---

Form Adopted for Mandatory Use
Judicial Council of California
DE-115/GC-015 [New January 1, 2020]

**NOTICE OF HEARING ON**
**PETITION TO DETERMINE CLAIM TO PROPERTY**

Page 1 of 2
Probate Code, §§ 851, 1215,
1220, 1460, 17203
www.courts.ca.gov

**DE-115/GC-015**

| ESTATE OF *(name):* | [ ] | [X] IN THE MATTER OF *(name):* |
|---|---|---|

THE CASTANA TRUST, DATED MARCH 4, 2009

[ ] DECEDENT  [X] TRUST  [ ] CONSERVATEE  [ ] MINOR

**CASE NUMBER:**
34-2016-00200990

## PROOF OF SERVICE BY MAIL*

1. I am over the age of 18 and not a party to this cause. I am a resident of or employed in the county where the mailing occurred.

2. My residence or business address is *(specify):*
   455 Capitol Mall, Suite 325
   Sacramento, CA 95818

3. I served the foregoing *Notice of Hearing on Petition to Determine Claim to Property* on each person named below by enclosing a copy in an envelope addressed as shown below AND

   a. [X] **depositing** the sealed envelope on the date and at the place shown in item 4 with the U.S. Postal Service with the postage fully prepaid.

   b. [ ] **placing** the envelope for collection and mailing on the date and at the place shown in item 4 following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in a sealed envelope with postage fully prepaid.

4. a. Date mailed: 6.15.2021
   b. Place mailed *(city, state):* Sacramento, California

5. [X] I served with the *Notice of Hearing on Petition to Determine Claim to Property* a copy of the petition referred to in the Notice.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 6/15/2021

Tracy Fonti

_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE)

## NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED

| | Name | Address *(street & number, city, state, zip code)* |
|---|---|---|
| 1. | David Zinnel | 6939 Lisa Marie Way<br>Carmichael, CA 95608 |
| 2. | Steven Zinnel #66138-097 | FTC Sheridan<br>PO Box 6000<br>Sheridan, OR 97378-6000 |
| 3. | TD Ameritrade Clearing, Inc. | Incorporating Service, LTD<br>7801 Folsom Blvd., Suite 202<br>Sacramento, CA 95826 |
| 4. | United States Attorney's Office<br>ED CA | Kurt A. Didier, Esq.<br>501 I Street, Suite 10-100<br>Sacramento, CA 95814 |
| 5. | | |
| 6. | | |

[ ] Continued on an attachment. *(You may use Attachment to Notice of Hearing Proof of Service by Mail, form DE-120(MA)/GC-020(MA), for this purpose.)*

* Do **not** use this form to prove personal or electronic service. You may use form DE-120(P) or GC-020(P) to prove personal service.

**NOTICE OF HEARING ON
PETITION TO DETERMINE CLAIM TO PROPERTY**

1    K. Greg Peterson, Esq. (SBN: 118287)
2    K. GREG PETERSON, a Professional Law Corporation
     455 Capitol Mall, Suite 325
3    Sacramento, California 95814
     Telephone:   (916) 443-3010
4    Facsimile:    (916) 492-2680
     Email:         greg@kgregpeterson.com
5

6    Attorney for Petitioner DAVID ZINNEL,
     Successor Trustee
7

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               FOR THE COUNTY OF SACRAMENTO

10   IN THE MATTER OF:          )    Case No.: 34-2016-00200990
                             )
11                              )
     THE CASTANA TRUST,        )
12    DATED MARCH 4, 2009      )    PETITION FOR ORDER DETERMINING
                             )    TITLE TO PERSONAL PROPERTY
13                              )
                             )    Date: _NOVEMBER 3_, 2021
14                              )    Time: 9:00 am
                             )    Dept.: 129 (Hon. Joginder Dhillon)
15                              )
                             )    [PC § 17200(B)(2), § 17200.1 &
16                              )    § 850(a)(3)(B)&(C)]
17                              )

18

19         Petitioner DAVID ZINNEL, Successor Trustee of the Castana Trust, established

20   March 4, 2009 (the "**Castana Trust**"), petitions for orders pursuant to Probate Code

     §§17200(b)(2), 17200.1 & 850(a)(3)(B)&(C), as follows:
21

22           1.   Petitioner is the son of ARDITH LOUISE FERRIS ("Ardith Ferris").

23           2.   Ardith Ferris died in Sacramento County, California, on September 21,

     2016. A true and correct copy of her Death Certificate is attached hereto as **Exhibit A**.
24

25

26

27

28



                                          -1-
       PETITION FOR ORDER DETERMINING TITLE TO PERSONAL PROPERTY

3. In addition to Petitioner, Ardith Ferris had one other child named STEVE ZINNEL. (See Section 1.2 of Ardith Ferris's Will, a true and correct copy of which is attached hereto as **Exhibit B**).[1]

4. On March 4, 2009, in addition to executing her Will, Ardith Ferris established the Castana Trust. A true and correct copy of the Castana Trust is attached hereto as **Exhibit C**.

5. Ardith Ferris's Will and the Castana Trust were originally drafted by Steve **Zinnel.**

6. At the time she established the Castana Trust, Ardith Ferris expressly told Steve Zinnel that she intended that all of her property, including a certain IRA rollover account (*0613) held in her name by TD Ameritrade Clearinghouse, Inc. ("IRA account (*0613)"), was to be included within the trust estate assets of the Castana Trust. Ardith Ferris subsequently failed to place title and ownership of the IRA Account (*0613) in the name of the Castana Trust.

7. Ardith Ferris's Will is a "pour over" will which provides that any probate estate is to be gifted to and distributed in accordance with the terms of the Castana Trust. (See sections 2.1 & 3.1 of Ardith Ferris's Will attached hereto as Exhibit B.)

8. Steve Zinnel is currently incarcerated in federal prison.

9. On April 6, 2017, this Court entered an order removing Steve Zinnel as a successor trustee of the Castana Trust and appointed Petitioner David Zinnel as the successor trustee.

10. It was not until April 14, 2021 that Petitioner learned of the following which Petitioner is informed and believes are true and correct:

    a. At the time of her death Ardith Ferris held in her individual name the aforementioned rollover IRA account (*0613) with TD Ameritrade Clearing, Inc. which contains various stocks, bonds, mutual funds,

---

[1] The original Will of Ardith Ferris has been lodged with this Court concurrently with the filing of this Petition.

PETITION FOR ORDER DETERMINING TITLE TO PERSONAL PROPERTY



money market accounts, other investments, and cash currently believed to be worth in excess of $1.3 million dollars;

b. The TD Ameritrade IRA account (*0613) application designates Steve Zinnel as the primary beneficiary upon Ardith Ferris's death;

c. The TD Ameritrade IRA account (*0613) was not established by Ardith Ferris. The application form was not dated or signed by Ardith Ferris but was instead dated and signed by Steve Zinnel who acted without any legal authority to do so on behalf of Ardith Ferris; and

d. Steve Zinnel designated himself as the primary beneficiary of the IRA Account (*0613) on the TD Ameritrade application.

11. Petitioner is informed and believes that the portion of the TD Ameritrade application for IRA account (*0613) designating Steve Zinnel as the primary (sole and only) beneficiary was unknown to Ardith Ferris, was not personally signed by her, does not represent her testamentary intentions and is inconsistent with her express testamentary intent to divide her estate equally between her two sons, David and Steve Zinnel, per her Will and Trust. Petitioner is informed and believes that a true and correct copy of the application which was signed by Steve Zinnel regarding TD Ameritrade IRA account (*0613) is attached hereto as **Exhibit D**.

12. The TD Ameritrade application for IRA account (*0613) expressly provides it is to be signed only by the account owner who was and is Ardith Ferris, now deceased, and the agreements made and designation of a beneficiary or beneficiaries could only be made by the account of owner, Ardith Ferris.

13. Under Section 5.4(a) of the Castana Trust, upon Ardith Ferris's death her remaining estate is to be distributed equally between her two children, David and Steve Zinnel.

14. Petitioner is informed and believes that on or about March 4, 2014, as part of the judgment entered against Steve Zinnel in his criminal case (United States of America vs. Steven Zinnel, USDC ED CA Case No. 2:11CR00234-01 TLN – hereinafter the "Federal Court Action"), criminal monetary penalties were awarded against Steve



1   Zinnel. Petitioner is further informed and believes that the United States of America

2   ("USA") claims Steve Zinnel still owes $3,014,294 of the criminal monetary penalties

3   ordered, which remain unpaid.

4       15. On or about April 7, 2021, USA initiated garnishment proceedings in the

5   Federal Court Action (United State of America vs. Steven Zinnel, USDC ED CA Case

6   No. 2:21-mc-00098-WBS-AC) and in which the USA alleges as follows:

7       a. TD Ameritrade remains in possession of the IRA account (*0613) which

8          is still held in the individual name of Ardith Ferris;

9       b. Steve Zinnel is alleged to be the sole and only beneficiary of the IRA

10         account (*0613) because of the designation in the TD Ameritrade IRA

11         application which shows him as the primary beneficiary; and

12      c. The USA seeks to garnish the IRA account (*0613), in full, in order to

13         apply the entire account balance against and in payment of the unpaid

14         criminal monetary penalties allegedly owed by Steve Zinnel under the

15         judgment entered in the Federal Court Action.

16      16. On May 3, 2020, petitioner filed a Third-Party Claim in the garnishment

17  proceedings initiated by the USA in the Federal Court Action.  In the pending

18  garnishment proceedings Petitioner has alleged an ownership interest in the TD

19  Ameritrade IRA account (*0613), disputed Steve Zinnel's designation as the Primary

20  Beneficiary of said account and that the account owner, Ardith Ferris, did not set up the

21  account, sign the account application or, most notably, designate Steve Zinnel as the

22  Primary Beneficiary of the IRA account (*0613).  Petitioner submitted copies of Ardith

23  Ferris's Will and the Castana Trust in the garnishment proceeding and has further

24  alleged it was Ardith Ferris's intention to include the IRA account (*0613) within her trust

25  estate and to be distributed pursuant to its provisions.

26

27

28

KGP
C. GREG PETERSON
A PROFESSIONAL LAW CORPORATION

17. On or about May 16, 2021, Steve Zinnel filed papers in the Federal Court Action garnishment proceedings[2] admitting, among other things, that:

    a. In or about August of 2005, Ardith Ferris received a retirement distribution from a previous employer that needed to be rolled over into an IRA account;

    b. Steve Zinnel opened TD Ameritrade IRA account (*0613);

    c. Steve Zinnel signed Ardith Ferris's name to the account application for IRA account (*0613);

    d. Steve Zinnel filled out the TD Ameritrade application listing himself as the primary beneficiary because the application form "only allowed the applicant to list one beneficiary in case of death of the account holder;"

    e. In 2009 Steve Zinnel recommended to Ardith Ferris that she place all of her assets in a family trust, including her retirement accounts, and that Ardith Ferris agreed to do so;

    f. Steve Zinnel then drafted the Castana Trust which provided that in the case of Ardith Ferris's death, the Castana Trust assets would be distributed equally between her two sons, David Zinnel and Steve Zinnel; and

    g. Ardith Ferris's Will is a "pour over" will that gifts any and all of her assets to the trustee of the Castana Trust.

18. Petitioner alleges the USA is not entitled to garnish the above referenced monies still held in the individual name of Ardith Ferris (deceased), and that the TD Ameritrade IRA account (*0613) is and should be determined by this Court to be property of the Castana Trust and distributed according to its provisions.

---

[2] See the Response and Objection to Third Party Claim of David Zinnel and Objection/Motion to Strike/Request for Hearing read TD Ameritrade's Answer attached as Exhibits A & B to and specific references to passages therein referenced in the Declaration of K Greg Peterson, Esq. submitted herewith.

PETITION FOR ORDER DETERMINING TITLE TO PERSONAL PROPERTY



19.     Petitioner alleges in light of the clear and convincing evidence that Ardith Ferris did not sign the TD Ameritrade IRA application for IRA account (*0613), the designation of Steve Zinnel as the primary beneficiary of said account does not reflect the intent of Ardith Ferris to create beneficial rights in favor of Steve Zinnel to the entirety of said account upon her death.  Petitioner further alleges that there is the clear and convincing evidence that under her Will and Trust Ardith Ferris intended the IRA account (*0613) together with all of her other assets to pass equally to her two sons, David Zinnel and Steve Zinnel, upon her death. Accordingly, the Petitioner in his capacity as a residual beneficiary is entitled to one half of the TD Ameritrade IRA account (*0613) including any and all stocks, mutual funds, money market accounts and cash held in and under said account.

20.     Petitioner seeks an order or orders pursuant to California Probate Code Sections 17200(b)(2), 17200.1 & 850(a)(3)(B)&(C) that legal title to TD Ameritrade IRA account (*0613) be transferred to him in his capacity as Trustee of the Castana Trust. While legal title to alleged interests of the Castana Trust in the IRA account (*0613) is currently held in the name of Ardith Ferris, who is deceased, and the TD Ameritrade account application shows Steve Zinnel as the primary beneficiary upon her death, for the reasons stated hereinabove, Petitioner as Successor Trustee of the Castana Trust holds equitable title to said property, and the legal title of the said TD Ameritrade IRA account (*0613) should and must be transferred to him forthwith.

21.     In the alternative, Petitioner seeks an order pursuant to the holding of Estate of Heggstad (1993) 16 Cal.App.4th 943 wherein the court held that where there was sufficient evidence of the intention of the original settlor/trustor shown that property was to be held in trust, that this was sufficient to transfer legal title to the property to the trust. See also Ukkestad v. RBS Asset Fin. Inc. (2015) 235 Cal.App.4th 156, 163-164.

22.     Petitioner requests that this Court order TD Ameritrade to continue to hold all assets contained within the TD Ameritrade IRA account (*0613) pending the resolution before the court of the proceedings in this matter and the subject matter of this Petition.

PETITION FOR ORDER DETERMINING TITLE TO PERSONAL PROPERTY

23.     Pursuant to California Rules of Court, rule 3.1204(a), the names, addresses and telephone numbers of the individuals entitled to notice of this ex parte Application are as follows:

| <u>Name</u> | <u>Relationship</u> |
|---|---|
| David Zinnel<br>6939 Lisa Marie Way<br>Carmichael, CA 95608 | Petitioner, Successor Trustee, and Beneficiary |
| Steven Zinnel #66138-097<br>FTC Sheridan<br>P. O. Box 6000<br>Sheridan, OR 97378-6000 | Beneficiary |
| TD Ameritrade Clearing, Inc.<br>Incorporating Service, LTD.<br>7801 Folsom Blvd., Suite 202<br>Sacramento, CA 95826 | |
| United States Attorney's Office ED CA<br>Kurt A. Didier, Esq.<br>501 I Street, Suite 10-100<br>Sacramento, CA 95814 | Attorney for United States of America |

WHEREFORE, Petitioner DAVID ZINNEL, successor trustee of the Castana Trust, prays for the following orders from this Court:

1.     That TD Ameritrade Clearinghouse, Inc. be ordered to continue to hold all assets contained within the TD Ameritrade IRA account (*0613) pending the resolution of this matter by this Court;

2.     That the TD Ameritrade IRA account (*0613), and all stocks, bonds, mutual funds, money market accounts, other investments and cash contained therein, be determined to be an asset of and that legal title thereof be transferred to Petitioner as successor trustee of the Castana Trust;

3.     That the TD Ameritrade IRA account (*0613) designation of Steve Zinnel as the primary beneficiary be designated void and of no legal effect; and

4.     For an award of Petitioner's costs of suit herein incurred and such further and other relief as this Court deems just and equitable under the circumstances.



-7-

PETITION FOR ORDER DETERMINING TITLE TO PERSONAL PROPERTY

1
2
3      Dated: May 28, 2021
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully Submitted,

K. GREG PETERSON, a Professional
Law Corporation

By: _____

K. Greg Peterson, Esq., Attorney for
Petitioner David Zinnel



-8-

PETITION FOR ORDER DETERMINING TITLE TO PERSONAL PROPERTY

## VERIFICATION

I, David Zinnel, Petitioner, declare:

I have read the foregoing PETITION FOR ORDER DETERMINING TITLE TO PERSONAL PROPERTY, and know the contents thereof. I believe that the same is true of my own knowledge, except to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct and that this verification was executed on May _____, 2021.

David Zinnel

PETITION FOR ORDER DETERMINING TITLE TO PERSONAL PROPERTY

K. GREG PETERSON
A PROFESSIONAL LAW CORPORATION

**PROOF OF SERVICE**

I, Tracy Fonti, do certify and declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action. My business address is 455 Capitol Mall, Suite 325, Sacramento, California  95814. On ~~May 28, 2021~~ *June 15, 2021*, I served the within documents:

**PETITION FOR ORDER DETERMINING TITLE TO PERSONAL PROPERTY**

☐     **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

x     **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid in the United States mail at Sacramento, California addressed as follows:

David Zinnel
6939 Lisa Marie Way
Carmichael, CA 95608

Steven Zinnel #66138-097
FTC Sheridan
P. O. Box 6000
Sheridan, OR 97378-6000

TD Ameritrade Clearing, Inc.
Incorporating Service, LTD.
7801 Folsom Blvd., Suite 202
Sacramento, CA 95826

United States Attorney's Office ED CA
Kurt A. Didier, Esq.
501 I Street, Suite 10-100
Sacramento, CA 95814

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on ~~May 28, 2021~~ *June 15, 2021*, at Sacramento, California.

_____
Tracy Fonti


KGP
C. GREG PETERSON
A PROFESSIONAL LAW CORPORATION

EXHIBIT A

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# SACRAMENTO COUNTY
## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### CERTIFICATE OF DEATH

| Field | Value |
|---|---|
| STATE FILE NUMBER | 305201618689 |
| DECEDENT'S NAME—FIRST | LOUIS |
| LAST | FERRIS |
| ARDITIC | |
| SEX | MALE |
| DATE OF BIRTH | |
| AGE | 71 |
| STATE/FOREIGN COUNTRY | IA |
| SOCIAL SECURITY NUMBER | 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 |
| EVER IN U.S. ARMED FORCES | NO |
| MARITAL STATUS | DIVORCED |
| DATE OF DEATH | 09/21/2016 |
| HOUR | 1410 |
| EDUCATION | ASSOCIATE |
| DECEDENT'S RACE | CAUCASIAN |
| OCCUPATION | ACCOUNTANT |
| KIND OF BUSINESS OR INDUSTRY | ACCOUNTING |
| YEARS IN OCCUPATION | 20 |
| RESIDENCE | 2428 GLENFAIRE DRIVE |
| CITY | RANCHO CORDOVA |
| COUNTY | SACRAMENTO |
| ZIP | 95670 |
| INFORMANT'S NAME, RELATIONSHIP | DAVID ZINNEL, SON |
| INFORMANT ADDRESS | 6030 LISBOARIE WAY, CARMICHAEL, CA 95608 |
| NAME OF FATHER | HOWARD WILLIAM FERRIS |
| NAME OF MOTHER | LOUISE JOSEPHINE DEAN |
| DISPOSITION DATE | 09/30/2016 |
| PLACE OF FINAL DISPOSITION | CREMATION |
| NAME AND ADDRESS OF FACILITY | LIND BROXHERS |
| LICENSE NUMBER | |
| PLACE OF DEATH | KAISER FOUNDATION HOSPITAL SACRAMENTO |
| CITY | SACRAMENTO |
| 2025 MORSE AVE | |
| COUNTY | SACRAMENTO |
| CAUSE OF DEATH | ACUTE CORONARY SYNDROME |
| | HYPERLIPIDEMIA |
| | HYPERTENSION |
| | OBESITY |
| OTHER SIGNIFICANT CONDITIONS | NONE |

| CERTIFYING PHYSICIAN | WARREN F BRANDLE M.D. |
| LICENSE NUMBER | G58031 |
| DATE | 09/27/2016 |
| ADDRESS | 1226 GOLD EXPRESS DRIVE STE 205, GOLD RIVER, CA 95670 |

CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

This is a true and exact reproduction of the document officially registered
and placed on file with Sacramento County Department of Health and
Human Services.

DATE ISSUED   October 18, 2016

This copy is not valid unless prepared on an engraved border displaying the date, seal and signature of the Registrar.

OLIVIA KASETTE, MD
LOCAL REGISTRAR



# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

## SACRAMENTO COUNTY
### DEPARTMENT OF HEALTH AND HUMAN SERVICES
AFFIDAVIT TO AMEND A RECORD
NO ERASURES, WHITEOUTS, OR COPIES.

STATE FILE NUMBER: 3052016186989    320163400528    LOCAL REGISTRATION NUMBER

☐ BIRTH    ☐ DEATH    ☐ FETAL DEATH

TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE VITAL RECORD

### PART I    INFORMATION TO LOCATE RECORD

| 1A. NAME – FIRST | 1B. MIDDLE | 1C. LAST |
|---|---|---|
| ARDITH | LOUISE | FERRIS |

INFORMATION AS IT APPEARS ON ORIGINAL

| 2. DATE OF EVENT | 3. CITY OF EVENT | 4. COUNTY OF EVENT |
|---|---|---|
| 09/21/2016 | SACRAMENTO | SACRAMENTO |

5. FULL NAME OF FATHER/PARENT AS STATED ON ORIGINAL RECORD    NAME OF MOTHER/PARENT AS STATED ON ORIGINAL RECORD
HOWARD WILLIAM FERRIS    JOSEPHINE DETI

### PART II    STATEMENT OF CORRECTIONS TO BIRTH, DEATH, OR FETAL DEATH RECORD

| 8. ITEM NUMBER TO BE CORRECTED | 9. INCORRECT INFORMATION THAT IS ON RECORD | 10. CORRECT INFORMATION AS IT SHOULD BE |
|---|---|---|
| 32 | WILLIAM | WALTER |
| 50 | 10TH CEMETERY, ST. CLAIR CEMETERY, IA 51066 | ST. CLAIR CEMETERY, IA 51066 |

AMENDED 2 OF 2

FAMILY PROVIDED CORRECTED INFORMATION AFTER RECORD WAS FILED

I/We, the undersigned, hereby certify under penalty of perjury that I/we have personal knowledge of the above facts and that the information given above is true and correct.

### AFFIDAVITS AND SIGNATURES

| 11A. SIGNATURE OF FIRST PERSON | 11B. TITLE/RELATIONSHIP TO PERSON OR AUTHORITY |
|---|---|
| DEVON VANEK    DEVON VANEK | FUNERAL DIRECTOR |

TWO PERSONS MUST SIGN THIS FORM TO CORRECT A BIRTH, DEATH, OR FETAL DEATH RECORD

| 12C. ADDRESS (STREET and NUMBER, CITY, STATE, ZIP) | 12E. DATE SIGNED |
|---|---|
| 4221 MANZANITA AVENUE, CARMICHAEL, CA 95608 | 10/04/2016 |

| 13A. SIGNATURE OF SECOND PERSON    CARLA PORTER    CARLA PORTER | 13B. TITLE/RELATIONSHIP TO PERSON OR AUTHORITY    GENERAL MANAGER |
|---|---|
| 13D. ADDRESS (STREET and NUMBER, CITY, STATE, ZIP)    4221 MANZANITA AVENUE, CARMICHAEL, CA 95608 | 13E. DATE SIGNED    10/10/2016 |

STATE/LOCAL REGISTRAR USE ONLY

| 14. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR    STATE REGISTRAR - OFFICE OF VITAL RECORDS | 15. DATE ACCEPTED FOR REGISTRATION    10/11/2016 |
|---|---|

STATE OF CALIFORNIA, DEPARTMENT OF PUBLIC HEALTH, OFFICE OF VITAL RECORDS    FORM VS 24 (REV 4/00)

### CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

This is a true and exact reproduction of the document officially registered and placed on file with the Sacramento County Department of Health and Human Services.

DATE ISSUED: October 18, 2016

OLIVIA KASIRYE, MD
LOCAL REGISTRAR

0016152227

This copy is not valid unless prepared on engraved border, displaying the date, seal and signature of the Registrar.

EXHIBIT B

0r 03 2017 1200_1046426_1386

# LAST WILL AND TESTAMENT OF

# ARDITH LOUISE FERRIS

OF 03 2017 1200_1046426_1387

I, ARDITH LOUISE FERRIS, formerly known as Ardith Louise Zinnel, residing in the County of Sacramento, State of California, hereby make, publish, and declare this to be my Last Will and Testament. I hereby expressly revoke any and all former Wills, Codicils, and Trusts that I have previously made.

## ARTICLE ONE

## INTRODUCTORY PROVISIONS

1.1    Marital Status. I am not currently married.

1.2    Identification of Living Children.    I have two living children, as follows:

| Names | Date of Birth |
|---|---|
| Steve K. Zinnel | 12/31/63 |
| David P. Zinnel | 2/18/70 |

1.3    No Deceased Children. I have no deceased children.

## ARTICLE TWO

## GIFT OF THE ENTIRE ESTATE

2.1.    Gift of Entire Estate. I give all of my property to the trustees of the Castana Trust, created under the trust agreement executed on the same date as, but immediately before, the execution of this will, by Ardith Louise Ferris, as Settlor. The trustee of that trust shall add the property disposed of under this will to the trust principal and hold, administer, and distribute the property in accordance with the provisions of that trust agreement, including any amendments of that trust agreement that have been made before or after execution of this will.

C⁻ 03 2017 1200_1046426_1388

## ARTICLE THREE

## RESIDUARY PROVISIONS

3.1. Disposition of Residue. If the Castana Trust has been revoked, terminated, or declared invalid for any reason, I give the residue of my estate to the executor of this will, as trustee, who shall hold, administer, and distribute the property under a testamentary trust, the terms of which shall be identical to the terms of the Castana Trust that are in effect on the date of execution of this will or such later date on which this will is republished.

## ARTICLE FOUR

## EXECUTOR

4.1. Nomination of Executor. I nominate Steve K. Zinnel of 11966 Old Eureka Way, Gold River, California 95670, whose telephone number is (916) 402-2640, as executor of this will.

4.2. Successor Executors. If Steve K. Zinnel is unable (by reason of death, incapacity, or any other reason) or unwilling to serve as executor, or if at any time the office of executor becomes vacant, by reason of death, incapacity, or any other reason, and no successor executor or coexecutors have been designated under any other provision of this will, then I nominate David P. Zinnel, my son, as successor executor. If David P. Zinnel is unwilling or unable to serve as successor executor, a new executor or coexecutors shall be appointed by the Court.

4.3. Waiver of Bond. No bond or undertaking shall be required of any executor nominated in this will.

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

05 03 2017 1200_1046426_1389

4.4. <u>General Powers of Executor.</u> The executor shall have full authority to administer my estate under the California *Independent Administration of Estates Act*. The executor shall have all powers now or hereafter conferred on executors by law, except as otherwise specifically provided in this will, including any powers enumerated in this will.

4.5. <u>Power to Invest.</u> The executor shall have the power to invest estate funds in any kind of real or personal property, as the executor deems advisable.

4.6. <u>Division or Distribution in Cash or in Kind.</u> In order to satisfy a pecuniary gift or to distribute or divide estate assets into shares or partial shares, the executor may distribute or divide those assets in kind, or divide undivided interests in those assets, or sell all or any part of those assets and distribute or divide the property in cash, in kind, or partly in cash and partly in kind. Property distributed to satisfy a pecuniary gift under this will shall be valued at its fair market value at the time of distribution. This section shall apply only to the extent that it does not conflict with the provisions of the Castana Trust.

4.7. <u>Power to Sell, Lease, and Grant Options to Purchase Property.</u> The executor shall have the power to sell, at either public or private sale and with or without notice, lease, and grant options to purchase any real or personal property belonging to my estate, on such terms and conditions as the executor determines to be in the best interest of my estate.

4.8. <u>Payments to Legally Incapacitated Persons.</u> If at any time any beneficiary under this will is a minor or it appears to the executor that any beneficiary is incapacitated,

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

05 03 2017 1200_1046426_1390

incompetent, or for any other reason not able to receive payments or make intelligent or responsible use of the payments, then the executor, in lieu of making direct payments to the beneficiary, may make payments to the beneficiary's conservator or guardian; to the beneficiary's custodian under the *Uniform Gifts to Minors Act* or *Uniform Transfers to Minors Act* of any state; to one or more suitable persons, as the executor deems proper, such as a relative or a person residing with the beneficiary, to be used for the benefit of the beneficiary; to any other person, firm, or agency for services rendered or to be rendered for the beneficiary's assistance or benefit; or to accounts in the beneficiary's name with financial institutions. The receipt of payments by any of the foregoing shall constitute a sufficient acquittance of the executor for all purposes.

## ARTICLE FIVE

## CONCLUDING PROVISIONS

5.1. <u>Definition of Death Taxes.</u> The term "death taxes," as used in this will, shall mean all inheritance, estate, succession, and other similar taxes that are payable by any person on account of that person's interest in my estate or by reason of my death, including penalties and interest, but excluding the following:

   (a) Any additional tax that may be assessed under *Internal Revenue Code* § 2032A.

   (b) Any federal or state tax imposed on a "generation-skipping transfer," as that term is defined in the federal tax laws, unless the applicable tax statutes provide that the generation-skipping transfer tax on that transfer is payable directly out of the assets of my gross estate.

5.2. <u>Payment of Death Taxes.</u> Pursuant to the trust agreement executed on the same

· Page 5

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

05 03 2017 1200_1046426_1391

date as, but immediately before, the execution of this will by Ardith Louise Ferris, as Settlor, all death taxes, whether or not attributable to property inventoried in my probate estate, shall be paid by the trustee from that trust. If that trust does not exist at the time of my death, or if the assets of that trust are insufficient to pay the death taxes in full, I direct the executor to pay any death taxes, whether or not attributable to property inventoried in my probate estate, that cannot be paid by the trustee, by prorating and apportioning those taxes among the persons interested in my estate, as provided in the *California Probate Code*.

5.3. <u>Simultaneous Death</u>. If any beneficiary under this will and I die simultaneously, or if it cannot be established by clear and convincing evidence whether that beneficiary or I died first, I shall be deemed to have survived that beneficiary, and this will shall be construed accordingly.

5.4. <u>Period of Survivorship</u>. For the purposes of this will, a beneficiary shall not be deemed to have survived me if that beneficiary dies within six months after my death.

5.5. <u>Intentional Omission of Children Born or Adopted After Execution of Will</u>. Except as otherwise provided in this will, I have intentionally failed to provide in this will for any children born to or adopted by me after the execution of this will.

5.6. <u>No-Contest Clause.</u> If any person, directly or indirectly, contests the validity of this will in whole or in part, or opposes, objects to, or seeks to invalidate any of its provisions, or the validity of any contract, agreement (including any Trust Agreement), declaration of trust, beneficiary designation, or other document executed by me (or for my benefit) that is a part of my integrated estate plan, or

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

˥ 03 2017 1200_1046426_1392

seeks to succeed to any part of my estate otherwise than in the manner specified in this will, any gift or other interest given to that person under this will shall be revoked and shall be disposed of as if he or she had predeceased me without issue. I specifically exempt petitions under California *Probate Code §§* 9860, 17200 or 17200.1 from the effect of this clause.

5.7. <u>Definition of Incapacity.</u> As used in this will, "incapacity" or "incapacitated" means a person operating under a legal disability such as a duly established conservatorship, or a person who is unable to do either of the following:

> (a)   Provide properly for that person's own needs for physical health, food, clothing, or shelter; or

> (b)   Manage substantially that person's own financial resources, or resist fraud or undue influence.

5.8. <u>Captions.</u> The captions appearing in this will are for convenience of reference only, and shall be disregarded in determining the meaning and effect of the provisions of this will.

5.9. <u>Severability Clause.</u> If any provision of this will is invalid, that provision shall be disregarded, and the remainder of this will shall be construed as if the invalid provision had not been included.

5.10. <u>California Law to Apply.</u> All questions concerning the validity and interpretation of this will, including any trusts created by this will, shall be governed by the laws of the State of California in effect at the time this will is executed.

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

OF 03 2017 1200_1046426_1393

Executed on March 4, 2009, at Gold River, California.

_____
Ardith Louise Ferris

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

05 03 2017 1200_1046426_1394

On the date written above, we, the undersigned, each being present at the same time, witnessed the signing of this instrument by Ardith Louise Ferris. At that time, Ardith Louise Ferris appeared to us to be of sound mind and memory and, to the best of our knowledge, was not acting under fraud, duress, menace, or undue influence. Understanding this instrument, which consists of nine (9) pages, including the pages on which the signature of Ardith Louise Ferris and our signatures appear, to be the will of Ardith Louise Ferris, we subscribe our names as witnesses thereto.

We declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 9, 2009, at Gold River, California.

Jayleyne Goltz
Witness

6295 Thornicroft Dr.
Valley Springs, CA 95252
T. 209-607-7251

Executed on March 9, 2009, at Gold River, California.

Steve K. Zinnel
Witness

11966 Old Eureka Way
Gold River, CA 95670
T. 916-402-2640

LAST WILL AND TESTAMENT OF ARDITH LOUISE FERRIS

EXHIBIT C

03 2017 1200_1046426_1363

# CASTANA TRUST

## ARTICLE ONE

## CREATION OF TRUST

1.1. <u>Parties.</u> This trust agreement is made by Ardith Louise Ferris (the "settlor" and "trustee") of Sacramento County, California. The settlor hereby transfers and assigns to the trustee certain property (the "trust estate"), in trust, to be held, administered, and distributed as provided in this instrument.

1.2. <u>Names of Trusts.</u> The trusts created by this instrument shall be known collectively as the Castana Trust, and each separate trust created under this instrument shall be referred to by adding the name or designation of that separate trust as it appears in the appropriate section of this instrument.

1.3. <u>Effective Date.</u> This agreement shall be effective immediately on execution by all the parties.

1.4. <u>Marital Status.</u> The settlor is unmarried.

1.5. <u>Identification of Living Children.</u> The settlor has two living children:

| Name | Date of Birth |
|------|---------------|
| Steve K. Zinnel | 12/31/63 |
| David P. Zinnel | 2/18/70 |

05 03 2017 1200_1046426_1364

1.6. <u>No Deceased Children.</u> The settlor has no deceased children.

1.7. <u>Definitions of Child. Children. and Issue.</u> As used in this instrument, the terms "child" and "children" refer to all persons referred to in California *Probate Code* § 26, as in effect at the time of execution of this instrument, and the term "issue" refers to all persons referred to in California *Probate Code* § 50, as in effect at the time of execution of this instrument.

## ARTICLE TWO
## TRUST ESTATE

2.1. <u>Definition of Trust Estate.</u> All property subject to this instrument from time to time is referred to as the "trust estate" and shall be held, administered, and distributed as provided in this instrument. The trustee shall hold, administer, and distribute the property described in any schedules of property (which are attached hereto and made a part of this trust instrument), any other property that may be hereafter subject to this trust, and the income and proceeds attributable to all such property, in accordance with the provisions of this instrument.

2.2. <u>Additions to Trust.</u> From time to time, the trustee may accept additions to this trust from any source. All such additions shall become part of the trust estate and shall be held, administered, and distributed in accordance with the terms of this instrument. That additional property shall become part of the trust estate on written acceptance of it by the trustee. Any additions to the trust shall be made by designating in writing the property to be added. However, the titling of any account, deed, or similar asset in the name of the trustee, as trustee of this trust, or any alternate or successor trustee acting under this instrument, shall be deemed to be a transfer to this trust. Any designation by a third

:?? 03 2017 1200_1046426_1365

party, whether by will, deed, account title designation, or similar transfer, shall also be a transfer to the trust estate.

## ARTICLE THREE

### RIGHTS AND POWERS OF SETTLOR

3.1. <u>Power of Revocation and Amendment.</u> Any trust created by this instrument may be amended, revoked, or terminated by the settlor, in whole or in part, at any time during her lifetime. After the settlor's death, any trust created by this instrument shall be irrevocable and not subject to amendment.

3.2. <u>Method of Revocation or Amendment.</u> Any amendment, revocation, or termination of any trust created by this instrument shall be made by written instrument signed by the settlor and delivered to the trustee. An exercise of the power of amendment substantially affecting the duties, rights, and liabilities of the trustee shall be effective only if agreed to by the trustee in writing.

3.3. <u>Delivery of Property After Revocation.</u> After any revocation or termination, the trustee shall promptly deliver the designated property to the settlor.

3.4. <u>Trustee's Retention of Assets on Revocation.</u> In the event of any revocation of all or part of the trust, the trustee shall be entitled to retain sufficient assets to reasonably secure the payment of liabilities the trustee has lawfully incurred in administering the trust and any fees that have been earned by the trustee, until such time as those liabilities have been discharged and fees paid, unless the settlor indemnifies the trustee against loss or expense.

3.5. <u>Settlor's Power to Borrow From Trust Estate.</u> Notwithstanding any other provision in this instrument, during the settlor's lifetime, the settlor may borrow from the income or principal of the trust estate, with or without security, such amounts on such terms as the

CASTANA TRUST

·05 03 2017 1200_1046426_1366

settlor specifies in a signed writing filed with the trustee.

3.6. <u>No Exercise of Rights and Powers of Settlor By Others.</u> The rights and powers of the settlor as provided in this instrument, including any power to amend, revoke, or terminate any trust created by this instrument, are personal to the settlor and may not be exercised by any other person or entity.

## ARTICLE FOUR

## DISTRIBUTIONS DURING SETTLOR'S LIFE

4.1. <u>Payment of Income During Settlor's Life.</u> So long as the settlor is living, the trustee shall pay to or apply for the benefit of the settlor all of the net income of the trust, in monthly or other convenient installments (but not less often than annually) as the settlor and the trustee may agree on from time to time.

4.2. <u>Distributions of Principal During Settlor's Lifetime.</u> From time to time during the settlor's lifetime, the trustee shall distribute to or apply for the benefit of the settlor as much of the principal of the trust as the trustee, in the trustee's discretion, deems proper for the settlor's comfort, welfare, and happiness. In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources then readily available to the settlor for use for these purposes and that are then known to the trustee. All decisions of the trustee regarding payments under this section, if any, are within the trustee's discretion and shall be final and incontestable by anyone.

4.3. <u>Distributions of Principal at Request of Settlor.</u> During the settlor's lifetime, the trustee shall distribute to the settlor such amounts from the principal of the trust, up to the whole thereof, as the settlor may from time to time request of the trustee in writing.

4.4. <u>Requests in Behalf of the Settlor Unable to Do So Personally.</u> If, at any time, the settlor is unable personally to make a request of the trustee to withdraw principal of the trust, the

CASTANA TRUST

05 03 2017 1200_1046426_1367

settlor's right to make the request may be exercised for or in her behalf by an attorney in fact who, at the time of the exercise, is duly appointed and acting for the settlor under a valid and enforceable durable power of attorney executed by the settlor under the Uniform Durable Power of Attorney Act, or any successor statute. If there is no such attorney in fact, then the trustee shall have the discretion to make any principal distribution to or for the benefit of the settlor that the settlor could have requested personally if she were able to do so. In making any principal distribution under this section (whether pursuant to a request by an attorney in fact or not), the trustee shall pay as much of the principal as the trustee, in the trustee's discretion, deems necessary for the settlor's health, education, support, and maintenance. The trustee shall have discretion to determine when the settlor is unable personally to request principal payments from the trustee for purposes of this section.

4.5. Trustee's Power to Make Gifts at Direction of Settlor. During the settlor's lifetime, the trustee shall distribute such sums of trust principal to such person or persons who are the natural objects of the settlor's bounty, as the settlor may direct in writing. In the event that the settlor is unable to direct the trustee in writing under this section due to incapacity, such direction may be made on the settlor's behalf by a duly authorized attorney in fact acting under a valid durable power of attorney executed by the settlor under the Uniform Durable Power of Attorney Act (or successor statute); provided, however, that the amount of such gifts pursuant to the direction of an attorney in fact to any one person in any one year shall not exceed the annual amount excluded from gift tax under Section 2503(b) of the Internal Revenue Code (or successor statute).

CASTANA TRUST

D5 03 2017 1200_1046426_1368

## ARTICLE FIVE

## DISTRIBUTIONS AFTER SETTLOR'S DEATH

5.1. Payment of Death Taxes, Debts, and Expenses on Statement From Personal Representative.
After the settlor's death, on receipt by the trustee of a written statement from the personal
representative of the settlor's estate requesting that the trustee pay death taxes, debts, and
expenses (as defined in Article Eight), with respect to any property in the settlor's estate,
the trustee shall pay, either directly or to the personal representative, any amounts
requested by the personal representative for those purposes, in the manner specified below.
The trustee may rely on the personal representative's statement and shall not be liable for
any act or omission by the personal representative in protesting or failing to protest the
legality, propriety, or amount of the death taxes, debts, or expenses. If there is no
personal representative, the trustee shall make the payments directly. Payments of debts
and expenses shall be made by the trustee from the trust estate. All death taxes payable
by reason of the settlor's death shall also be paid by the trustee from the trust estate.

5.2. Trustee's Power to Defer Division or Distribution. Whenever the trustee is directed to
divide any part of the trust estate or distribute trust assets on the death of the settlor,
the trustee may, in the trustee's discretion, defer actual division or distribution for such
reasonable period of time as is needed to effectively identify, take possession of, value,
divide, and distribute the assets of the trust. During this time of deferral, the trustee
may manage the trust assets through a single administrative trust. The ability of the
trustee to delay division or distribution shall not affect the vesting of interests, which
shall be as of the date of death.

05 03 2017 1200_1046426_1369

5.3. Distribution of specific trust assets. On the settlor's death, the trustee is directed to distribute the following specific assets:

See Exhibit 1 attached hereto.

Exhibit 1 attached hereto, which may be amended from time to time at the Settlor's sole discretion. To be effective and operative, the attached "Exhibit" 1 must be signed and dated by Ardith Ferris as the Settlor and Trustee. In the event of a conflict, the most recently signed and dated "Exhibit 1" is operative.

5.4. Disposition of Remaining Trust Estate. On the settlor's death, the remaining trust estate shall be disposed of:

(a) If any children of the settlor survive her, the trustee shall divide the trust property into as many shares of equal market value as are necessary to create one share for each of the settlor's children who survive her and one share for each of the settlor's children who predecease her but who leave issue surviving her, as limited by subparagraph (f) below.

(b) Each share created for a deceased child shall be distributed to the then-living issue of that deceased child in the manner provided in California *Probate Code* § 246. If an individual issue of a deceased child has reached the age of 25 years at the death of the settlor, the trustee shall distribute that issue's share outright to that issue; if an individual issue of a deceased child has not reached the age of 25 years at the death of the settlor, the trustee shall continue to hold, administer, and distribute that issue's share in a separate trust for that issue according to the terms set forth in Article Six applicable to the Separate Share Trust for Issue.

05 03 2017 1200_1046426_1370

(c) If none of the children of the settlor survive her, but the settlor leaves issue surviving, the trustee shall distribute the trust property to those issue, who are to take that property in the manner provided in California *Probate Code* § 246. If an individual issue has reached the age of 25 years at the death of the settlor, the trustee shall distribute that issue's share outright to that issue; if an individual issue has not reached the age of 25 years at the death of the settlor, the trustee shall continue to hold, administer, and distribute that issue's share in a separate trust for that issue according to the terms set forth in Article Six applicable to the Separate Share Trust for Issue.

(d) If none of the issue of the settlor survive her, the trust property shall be distributed outright to the settlor's heirs.

(e) Any business owned by settlor, regardless of the form of the business (i.e., sole proprietorship, Corporations, Limited Liability Companies) shall be immediately distributed free of trust to Settlor's heirs.

## ARTICLE SIX

## DISPOSITIVE PROVISIONS OF TRUST CREATED

## AFTER SETTLOR'S DEATH

6.1  <u>Spendthrift Clause:</u> The interests of the beneficiaries under this instrument are not transferable by voluntary or involuntary assignment or by operation of law, and shall be free from the claims of creditors and from attachment, execution, bankruptcy, and other

05 03 2017 1200_1046426_1371

legal process, to the maximum extent permitted by law. If any such transfer is made or attempted by or against any beneficiary, all further trust payments of income or principal or both to that beneficiary (and any right of that beneficiary to such payments) shall be suspended for a period of time or indefinitely (but in no case for longer than the term of the trust) as the trustee determines. In lieu of payments to that beneficiary, the trustee may apply so much of the trust income or principal or both to which the beneficiary would otherwise be entitled as the trustee deems necessary for the beneficiary's education and support. All trust income (to which the beneficiary would otherwise be entitled) not so applied shall in the discretion of the trustee be accumulated and added to trust at such time or times as the trustee deems proper.

## ARTICLE SEVEN

## TRUSTEE

7.1. <u>Settlor's Power to Designate Successor Trustees.</u> Initially, Settlor designates Steve A. Zinnel, Settlor's son as her Successor Trustee. However, at any time, the settlor may designate any suitable person or entity to act as a successor trustee if the trustee dies, becomes incapacitated, or is otherwise unable or unwilling to continue to act as trustee or co-trustee. Any designation under this section shall be made by a signed writing delivered to the person or entity designated as successor trustee or co-trustee. If more than one designation is made under this section, only the most recent designation shall be valid.

7.2. <u>Not Used.</u>

7.3. <u>Successor Trustees.</u> If the office of trustee becomes vacant by reason of death, incapacity, or any other reason, and no successor trustee or co-trustees have been designated under any

05 03 2017 1200_1046426_1372

other provision of this trust instrument, a new trustee or co-trustee shall be appointed by the court.

7.4. <u>Definition of Trustee.</u> Reference in this instrument to "the trustee" shall be deemed a reference to whoever is serving as trustee or co-trustees, and shall include alternate or successor trustees or co-trustees, unless the context requires otherwise.

7.5. <u>Removal and Replacement of Trustee by Settlor.</u> The settlor shall have the power, at any time and for any reason, with or without cause, to remove any trustee acting under this instrument, and notwithstanding any other provision of this instrument, designate another trustee to replace the removed trustee. Removal shall be effected by giving a written notice of removal to the trustee to be removed and to the designated successor. The removal shall become effective on the delivery to the settlor of a written acceptance of the trust by the successor trustee, and the settlor shall promptly notify the trustee being removed of the receipt of that acceptance.

7.6. <u>Waiver of Bond.</u> No bond or undertaking shall be required of any individual who serves as a trustee under this instrument.

7.7. <u>Procedure for Resignation.</u> Any trustee may resign at any time, without giving a reason for the resignation, by giving written notice, at least ninety (90) days before the time the resignation is to take effect, to the settlor, if living, to any other trustee then acting, to any persons authorized to designate a successor trustee, to all trust beneficiaries known to the trustee (or, in the case of a minor beneficiary, to the parent or guardian of that beneficiary) and to the successor trustee. A resignation shall be effective on written acceptance of the trust by the successor trustee.

7.8. <u>General Powers of Trustee.</u> To carry out the purposes of the trusts created under this instrument, and subject to any limitations stated elsewhere in this instrument, the trustee

05 n3 2017 1200_1046426_1 373

shall have all of the following powers, in addition to all of the powers now or hereafter conferred on trustees by law:

(a)   With or without court authorization, sell (for cash or on deferred payments, and with or without security), convey, exchange, partition, and divide trust property; grant options for the sale or exchange of trust property for any purpose, whether the contract is to be performed or the option is to be exercised within or beyond the term of the trust; and lease trust property for any purpose, for terms within or extending beyond the expiration of the trust, regardless of whether the leased property is commercial or residential and regardless of the number of units leased.

(b)   Engage in any transactions with the personal representative of the estate of the settlor that are in the best interest of any trusts created in this instrument.

(c)   Manage, control, improve, and maintain all real and personal trust property.

(d)   Subdivide or develop land; make or obtain the vacation of plats and adjust boundaries, or adjust differences in valuation on exchange or partition by giving or receiving consideration; and dedicate land or easements to public use with or without consideration.

(e)   Make ordinary or extraordinary repairs or alterations in buildings or other trust property, demolish any improvements, raze existing party walls or buildings, and erect new party walls or buildings, as the trustee deems advisable.

(f)   Employ and discharge agents and employees, including but not limited to attorneys, accountants, investment and other advisers, custodians of assets, property managers, real estate agents and brokers, and appraisers, to advise and assist the trustee in the management of any trusts created under this trust instrument, and compensate them from the trust property.

Page 11

CASTANA TRUST

05 03 2017 1280_1046426_1374

(g)   With respect to securities held in trust, exercise all the rights, powers, and privileges of an owner, including, but not limited to, the power to vote, give proxies, and pay assessments and other sums deemed by the trustee necessary for the protection of the trust property; participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations, and, in connection therewith, deposit securities with and transfer title to any protective or other committee under such terms as the trustee deems advisable; exercise or sell stock subscription or conversion rights; and accept and retain as investments of the trust any securities or other property received through the exercise of any of the foregoing powers.

(h)   Hold securities or other trust property in the trustee's own name or in the name of a nominee, with or without disclosure of the trust, or in unregistered form, so that title may pass by delivery.

(i)   Deposit securities in a securities depository that is either licensed or exempt from licensing.

(j)   Borrow money for any trust purpose from any person or entity, including one acting as trustee hereunder, on such terms and conditions as the trustee deems advisable, and obligate the trust for repayment; encumber any trust property by mortgage, deed of trust, pledge, or otherwise, whether for terms within or extending beyond the term of the trust, as the trustee deems advisable, to secure repayment of any such loan; replace, renew, and extend any such loan or encumbrance; and pay loans or other obligations of the trust deemed advisable by the trustee.

(k)   Procure and carry, at the expense of the trust, insurance in such forms and in such

:05 03 2017 1200_1046426_1375

amounts as the trustee deems advisable to protect the trust property against damage or loss, and to protect the trustee against liability with respect to third persons.

(l)   Enforce any obligation owing to the trust, including any obligation secured by a deed of trust, mortgage, or pledge held as trust property, and purchase any property subject to a security instrument held as trust property at any sale under the instrument.

(m)   Extend the time for payment of any note or other obligation held as an asset of, and owing to, the trust, including accrued or future interest, and extend the time for repayment beyond the term of the trust.

(n)   Pay or contest any claim against the trust; release or prosecute any claim in favor of the trust; or, in lieu of payment, contest, release, or prosecution, adjust, compromise, or settle any such claim, in whole or in part, and with or without consideration.

(o)   At trust expense, prosecute or defend actions, claims, or proceedings of whatever kind for the protection of the trust property and of the trustee in the performance of the trustee's duties, and employ and compensate attorneys, advisers, and other agents as the trustee deems advisable.

7.9. Power to Retain Trust Property. The trustee shall have the power to retain property received into the trust at its inception or later added to the trust, as long as the trustee considers that retention in the best interests of the trust or in furtherance of the goals of the settlor in creating the trust, as determined from this trust instrument, but subject to the standards of the prudent investor rule as set forth in the California *Uniform Prudent Investor Act*, as amended from time to time.

05 03 2017 1200_1646426_1376

7.10. Trustee's Power to Invest Property. Subject to the standards of the prudent investor rule as stated in the California Uniform Prudent Investor Act, as amended from time to time, the trustee shall have the power to invest and manage the trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust.

7.11. Power Over Unproductive Property. The trustee shall have the power to retain or acquire unproductive or underproductive property.

7.12. Power to Operate Business. The trustee shall have the power to hold and operate any business or enterprise that is or becomes trust property, on such terms and for such a time as the trustee, in the trustee's discretion, deems advisable; to purchase, acquire, invest in, or otherwise participate in, any business or other enterprise on behalf of the trust; or to sell, dissolve, liquidate, or terminate any such business. The trustee shall also have the power to incorporate, reorganize, or otherwise change the form of a business or enterprise that is part of the trust, through merger or consolidation of two or more enterprises or otherwise, and to participate in that business or enterprise as a sole proprietor, as a general or limited partner, as a shareholder, or in any other capacity. Any operation, sale, purchase, acquisition, investment in, or dissolution or liquidation of a business interest, in good faith, shall be at the risk of the trust, and without liability on the part of the trustee for any resulting losses. The trustee shall also have the power to contribute capital or loan money to the business or enterprise on such terms and conditions as the trustee deems advisable.

7.13. Power to Operate Farm or Ranch. The trustee shall have the power to continue to hold, operate, sell, purchase, acquire, invest in, or liquidate any farming or ranch property, or any interest in farming or ranching property, whether organized as a sole proprietorship,

CASTANA TRUST

05.03 2017 1200_1046426_1377

general or limited partnership, corporation, or otherwise, on such terms and for such time as the trustee, in the trustee's discretion, deems advisable. Any such operation, sale, purchase, acquisition, investment, or liquidation, in good faith, shall be at the risk of the trust and without liability on the part of the trustee for any resulting losses. The trustee shall have all powers necessary or appropriate to carry out the management of such farming and ranching property. The trustee shall also have the power to incorporate any farming or ranching property, or any interest therein, and to hold the stock as a trust asset; to borrow money for any purpose related to the operation, or the acquisition or disposition, of any such farming or ranching interests; and to employ agents in the management and operation of that property. The net profits and losses from the farming and ranching operations conducted by the trust shall be computed in accordance with recognized methods of accounting for comparable activities. The net profits from these activities shall become trust income. The net losses from these activities shall not reduce other trust income for the fiscal or calendar year during which they occur, but shall be carried into subsequent fiscal or calendar years and reduce the net profits of the business for those years.

7.14. <u>Power to Combine Trust Assets.</u> Each trust created under this instrument shall constitute a separate trust and be administered accordingly; however, the assets of all of the trusts may be combined for bookkeeping purposes and held for the trust beneficiaries without physical division into separate trusts until time of distribution.

7.15. <u>Early Termination of Trusts.</u> The trustee shall have the power, in the trustee's discretion, to terminate any trust created under this trust instrument whenever the fair market value of the trust falls below twenty-five thousand dollars ($25,000), or becomes so small in relation to the costs of administration as to make continuing

:05:03 2017 1200_1046426_1378

administration uneconomical. Continuing administration shall be uneconomical if the trustee determines that, with reference to the trust fee schedules then in effect for corporate fiduciaries in the area in which the trust is being administered, the trust would be subject to the minimum trust administration fees of those fiduciaries, regardless of the value of the trust. On termination, the trustee shall distribute the principal and any accrued or undistributed net income to the income beneficiaries in proportion to their shares of the income. If no fixed amount of income is payable to specific beneficiaries, the trustee shall distribute the principal and any accrued or undistributed net income in equal shares to those beneficiaries who would then be entitled to income payments from the trust.

7.16. <u>Division or Distribution in Cash or Kind.</u> In order to satisfy a pecuniary gift or to distribute or divide trust assets into shares or partial shares, the trustee may distribute or divide those assets in kind, or divide undivided interests in those assets, or sell all or any part of those assets and distribute or divide the property in cash, in kind, or partly in cash and partly in kind. Property distributed to satisfy a pecuniary gift under this instrument shall be valued at its fair market value at the time of distribution.

7.17. <u>Payments to Legally Incapacitated Persons.</u> If at any time any trust beneficiary is a minor, or it appears to the trustee that any trust beneficiary is incapacitated, incompetent, or for any other reason not able to receive payments or make intelligent or responsible use of the payments, then the trustee, in lieu of making direct payments to the trust beneficiary, may make payments to the beneficiary's conservator or guardian; to the beneficiary's custodian under the Uniform Gifts to Minors Act or Uniform Transfers to Minors Act of any state; to one or more suitable persons as the trustee deems proper, such as a relative of or a person residing with the beneficiary, to be used for the beneficiary's benefit; to any other person, firm, or agency for services rendered or to be rendered for

05 03 2017 1200_1046426_1379

the beneficiary's assistance or benefit; or to accounts in the beneficiary's name with financial institutions. The receipt of payments by any of the foregoing shall constitute a sufficient acquittance of the trustee for all purposes.

7.18. Trustee's Liability. No trustee shall be liable to any interested party for acts or omissions of that trustee, except those resulting from that trustee's willful misconduct or gross negligence. This standard shall also apply regarding a trustee's liability for the acts or affected by that event.

7.19. Written Notice to Trustee. Until the trustee receives written notice of any death other event on which the right to payments from any trust may depend, the trustee shall incur no liability for disbursements made in good faith to persons whose interests may have been omissions of any co-trustee, predecessor trustee, or agent employed by the trustee.

7.20. Duty to Account. The trustee shall render accounts at least annually, at the termination of a trust, and on a change of trustees, to the persons and in the manner required by law.

## ARTICLE EIGHT

## CONCLUDING PROVISIONS

8.1. Perpetuities Savings Clause. Notwithstanding any other provision of this instrument, every trust created by this instrument shall terminate no later than twenty-one (21) years after the death of the last survivor of the Settlor's issue who are alive at the creation of the trust. For purposes of this perpetuities savings clause, a trust shall be deemed to have been created on the date the trust becomes irrevocable or the date of the death of the settlor, whichever occurs first. If a trust is terminated under this section, the trustee shall

05.03 2017 1200_1046426_1380

distribute all of the principal and undistributed income of the trust to the income beneficiaries of the trust in the proportion in which they are entitled (or eligible, in the case of discretionary payments) to receive income immediately before the termination. If that proportion is not fixed by the terms of the trust, the trustee shall distribute all of the trust property to the persons then entitled or eligible to receive income from the trust outright in a manner that, in the trustee's opinion, will give effect to the intent of the settlor in creating the trust. The trustee's decision is to be final and incontestable by anyone.

8.2. <u>Simultaneous Death.</u> If any beneficiary under this instrument and the settlor die under circumstances in which the order of their deaths cannot be established by clear and convincing evidence, the settlor shall be deemed to have survived the beneficiary, and the provisions of this instrument shall be construed accordingly.

8.3. <u>Survivorship Requirement.</u> For the purposes of this instrument, a beneficiary shall be deemed not to have survived the settlor if that beneficiary dies within six months after the settlor's death.

8.4. <u>No-Contest Clause.</u> If any beneficiary under this instrument, singularly or in combination with any other person or persons, directly or indirectly contests this instrument, any amendment to this instrument, or the will of the settlor in whole or in part, or opposes, objects to, or seeks to invalidate any of the provisions of this instrument or the will of the settlor, or seeks to succeed to any part of the estate of the settlor other than in the manner specified in this instrument or in the will of the settlor, then the right of that person to take any interest given to him or her by this instrument or any amendment to this instrument shall be void, and any gift or other interest in the trust property to which the beneficiary would otherwise have been entitled shall pass as if he or she had predeceased the settlor without issue. Settlor specifically exempts petitions under

·05 03 2017 1200_1046426_1381

California *Probate Code* §s 9860, 17200 or 17200.1 from the effect of this clause.

8.5. Definitions of Death Taxes, Debts, and Expenses. As used in this instrument, the following definitions apply:

(a)    The term "death taxes" shall mean all inheritance, estate, succession, and other similar taxes that are payable by any person on account of that person's interest in the estate of the settlor or by reason of the settlor's death, including penalties and interest, but excluding the following: (i) any additional tax that may be assessed under Internal Revenue Code Section 2032A; and (ii) any federal or state tax imposed on any generation-skipping transfer, as that term is defined in the federal tax laws, unless that generation-skipping transfer tax is payable directly out of the assets of a trust created by this instrument.

(b)    The term "debts and expenses" shall include the following: (i) all costs, expenses of litigation, counsel fees, or other charges that the trustee incurs in connection with the determination of the amount of the death taxes, interest, or penalties referred to in subsection (a) of this section; and (ii) legally enforceable debts, funeral expenses, expenses of last illness, and administration and property expenses.

8.6. Definition of Incapacity. As used in this instrument, "incapacity" or "incapacitated" means a person operating under a legal disability such as a duly established conservatorship, or a person who is unable to do either of the following:

(a)    Provide properly for that person's own needs for physical health, food, clothing, or shelter; or

(b)    Manage substantially that person's own financial resources, or resist fraud or undue

Page 19

CASTANA TRUST

.05 03 2017 1200_1046426_1382

influence.

8.7. Definition of Education. As used in this instrument, the term "education" refers to the following:

(a)   Education at public or private elementary, junior high, middle, or high schools, including boarding schools;

(b)   Undergraduate, graduate, and postgraduate study in any field, whether or not of a professional character, in colleges, universities, or other institutions of higher learning;

(c)   Specialized formal or informal training in music, the stage, the handicrafts, or the arts, whether by private instruction or otherwise; and

(d)   Formal or informal vocational or technical training, whether through programs or institutions devoted solely to vocational or technical training, or otherwise.

8.8. Captions. The captions appearing in this instrument are for convenience of reference only, and shall be disregarded in determining the meaning and effect of the provisions of this instrument.

8.9. Severability Clause. If any provision of this instrument is invalid, that provision shall be disregarded, and the remainder of this instrument shall be construed as if the invalid provision had not been included.

8.10. California Law to Apply. All questions concerning the validity, interpretation, and administration of this instrument, including any trusts created under this instrument, shall be governed by the laws of the State of California, regardless of the domicile of any trustee or beneficiary.

8.11. Distribution to Issue. If a division of property is to be made under this instrument among the issue of an individual, who is referred to in this section as the Designated Ancestor,

05 03 2017 1200_1046426_1383

that division shall be made in the manner set forth in California *Probate Code* § 246. Accordingly, that division shall be made at the generation of the Designated Ancestor's children, regardless of whether any of those children survive the Designated Ancestor. The property shall be divided into as many equal shares as there are children of the Designated Ancestor who survive the Designated Ancestor (if any) plus deceased children of the Designated Ancestor who leave issue who survive the Designated Ancestor. Each child of the Designated Ancestor who survives the Designated Ancestor shall receive one such equal share. The equal share of each deceased child of the Designated Ancestor who leaves issue who survive the Designated Ancestor shall in turn be divided among that deceased child's issue who survive the designated ancestor in the manner described in this section as if the deceased child were the Designated Ancestor as to that share.

8.12. Gifts to Heirs. For any gift to "heirs" of the settlor that is made in this instrument, those heirs shall be determined as if the settlor had died intestate at the time for distribution prescribed in this instrument, and the identity and shares of those heirs shall be determined according to the California laws of succession that concern separate property not acquired from a previously deceased spouse and that are in effect at the time the settlor is deemed to have died.

## ARTICLE NINE

## SIGNATURE AND EXECUTION

9.1. Execution. I certify that I have read the foregoing trust agreement and that it correctly states the terms and conditions under which the trust estate is to be held, administered, and

05 03 2017.1200 T046426_1384

distributed. The settlor approves this trust agreement in all particulars. The trustee approves and accepts the trusts provided for in this trust agreement.

Executed on March 4, 2009 at Gold River, California.

SETTLOR

_____

Ardith Louise Ferris, Settlor

TRUSTEE

_____

Ardith Louise Ferris, Trustee

⌐ ⌐3 2017 1200_1046426_1385

## California All-Purpose Acknowledgment

State of California    )

                                    ) SS

County of Calaveras )


On March 4, 2009, before me, Jayleyne Goltz, a notary public in and for the State of California, personally appeared Ardith Louise Ferris, personally who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.


I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.


WITNESS my hand and official seal.



Notary Public

> J. JAYLEYNE GOLTZ
> COMM. # 1831925
> NOTARY PUBLIC - CALIFORNIA
> CALAVERAS COUNTY
> COMM. EXPIRES JAN. 18, 2013

---

Page 23

CASTANA TRUST

## EXHIBIT 1

## DISTRIBUTION OF SPECIFIC TRUST ASSETS OF
## CASTANA TRUST

Pursuant to paragraph 5.3 of the Total Trust, initially established on March 4, 2009, on the settlor's death, the trustee is directed to distribute the following specific assets:

None at this time.

I certify that this "Exhibit 1", distributing specific assets, shall be effective immediately on execution by me and that any former "Exhibit 1" distributing specific assets are hereby expressly revoked.

Executed on March 4, 2009 at Gold River, California.

SETTLOR

_____
Ardith Louise Ferris, Settlor

TRUSTEE

_____
Ardith Louise Ferris, Trustee

Page 1

DISTRIBUTION OF SPECIFIC TRUST ASSETS

EXHIBIT D

Open Your Account

Page 1 of 3

BEGIN FORM - Terms and Conditions Effective: Tue Jul 19 09:32:48 CDT 2005



# AMERITRADE

| For Internal Use Only | |
|---|---|
| Account Number: | ████0613 |
| Type: | Rollover (Non-Contributory) IRA |
| Registration: | Cash |
| Referrer: | direct |
| Ad Code: | web |

**Mailing Address**
Standard Delivery:
Overnight Delivery:
Fax:

PO Box 2760, Omaha, NE 68103-2760
1005 N. Ameritrade Place, Bellevue, NE 68005
816-243-3769

**New Account Information**
Type:
Registration:
Receive Corp. Communications:
Email Address:
Account Statement:
Trade Confirmation:
Funding:
Contribution Tax Year:
Type of Deposit:

Rollover (Non-Contributory) IRA
Cash
Yes
szinnel@████████
Monthly Electronic
Electronic
Transfer

Direct Transfer

DOCUMENT    11609805

**Primary Account Owner**
Name:
Street Address:

ARDITH L FERRIS

GOLD RIVER, CA 95670
UNITED STATES OF AMERICA
Marital Status:                    Divorced
Home Phone:                        (916) 402-████
Social Security Number:            ████7239
Date of Birth:                     ████ 1945
Mother's Maiden Name:              Dethlefs
Citizenship:                       US Citizen
Employment Status:                 Self Employed
Employer:                          Ardith Ferris
Employer Address:                  ████████

Gold River, CA 95670
UNITED STATES OF AMERICA

Corporate Affiliation:             No
NASD Affiliation:                  No

**Financial Questionnaire**
Income:                            $ ████
Networth:                          $ ████
Liquid Networth:                   $ ████
**Primary Beneficiary**
Name:                              Steve Zinnel
Percentage:                        100%
Social Security Number:            ████073
Date of Birth:                     ████ 963
Relationship:                      Son
Mailing Address:                   ████████

GOLD RIVER, CA 95670
UNITED STATES OF AMERICA

https://wwwna.ameritrade.com/cgi-bin/apps/IraApServlet?pagehandler=IraPrintedApp&unique_id=32621...   7/19/2005

## PRIMARY BENEFICIARY SPOUSAL AGREEMENT

If the participant's spouse is not designated as the sole primary beneficiary, the spouse must sign the following consent. "I hereby consent to the above beneficiary designation and, if a resident of a community property or marital property state, I give the account holder any interest in the funds deposited in this account."

Date: _____      Signature of Spouse

x _____

Account Number: ▓▓▓▓0613

## IRA CASH AGREEMENT

I am establishing an Individual Retirement Account Plan under the Ameritrade Clearing, Division of Ameritrade, Inc. (Custodian) Prototype Individual Retirement Plan and Custodial Agreement, which is incorporated by reference. I understand that the account is subject to rules and regulations of the United States Internal Revenue Service, and that the funding of the account may have significant tax and financial consequences. I accept responsibility for the information contained in this application and affirm such information is true and correct. I agree to indemnify and hold harmless Ameritrade and Ameritrade Clearing, Division of Ameritrade, Inc. from any and all liability and claims for damages resulting from any action taken pursuant to this Agreement

I designate Ameritrade Clearing, Division of Ameritrade, Inc. as Custodian and make the following declaration:

I understand that the Custodian will invest and reinvest my account assets only with written direction from me or from a properly appointed Investment Manager. This document constitutes my authority to execute all trades for my IRA. Confirmations and statements will verify such instructions. All securities, dividends and proceeds will be held at Ameritrade Clearing, Division of Ameritrade, Inc. unless otherwise instructed.

For Individual (Contributory) IRAs: I direct Ameritrade Clearing, Division of Ameritrade, Inc. to maintain my deductible, rollover, and direct rollover contribution(s) in a contributory Individual Retirement Account.

For Rollover (Non-Contributory) IRAs: I understand that if I make any contributions to this account, which holds funds rolled over from an employee benefit plan, or otherwise commingle rollover amounts, I cannot roll the funds over to another employee benefit plan at a later date. Upon my contribution to this account, I understand my account will be automatically changed to an Individual Contributory IRA.

Under penalties of perjury, I certify (1) that the Social Security Number shown on this form is my correct taxpayer identification number and (2) that I am not subject to backup withholding and (3) I am a U.S. person (including a resident alien); provided, however, if I am a non-resident alien as disclosed in this application, I do not certify that I am a U.S. person. If I have been notified by the IRS that I am subject to backup withholding as a result of dividend or interest underreporting, I must cross out (2) in this certification.

If I am a non-resident alien, I declare that I have "earned income" within the United States. "Earned income" does not include, among other things, money earned from property, interest or dividend income, money received from a pension or annuity, money received as deferred compensation or as a deferred incentive award.

I understand this Designation of Beneficiary will be effective on the date received by the Custodian. This Designation of Beneficiary will remain in full force and effect until such time as the Custodian is in actual receipt of a written revocation or change of beneficiary signed by me and in such form and substance as the Custodian deems necessary. If I change the beneficiaries, all previously designated beneficiaries no longer have the right to receive benefits under this Agreement.

This application provides for the deposit of funds or securities into the account. I understand that the funding of this account is subject to the rules and regulations of the United States Internal Revenue Service and that my failure to abide by such rules and regulations may have important and possibly irrevocable tax and financial consequences. I attest that the funding information provided is true and correct, authorize Ameritrade Clearing, Division of Ameritrade, Inc. to deposit the funds or securities according to the funding instructions, and assume full responsibility for this funding transaction. I release and agree to indemnify and hold harmless Ameritrade Clearing, Division of Ameritrade, Inc. from any and all liability and claims for

B
o
x

5
0
2

(Page 7 of 8)

**Open Your Account**

Page 3 of 3

Case 2:11-cr-00234-TLN   Document 670-1   Filed 03/24/21   Page 8 of 22
damages for any adverse consequences that may result.

I have received and read the Terms and Conditions that will govern my account. I understand that the Terms and Conditions contain pre-dispute arbitration clauses. I agree to be bound by these terms and conditions as amended from time to time. I hereby request an IRA account to be opened in the name set forth below.

**This Brokerage Account Agreement contains pre-dispute arbitration clauses in the Terms and Conditions section.**

I understand that investments purchased through Ameritrade are not insured by the FDIC (Federal Deposit Insurance Corporation), are not obligations of or guaranteed by any financial institution and are subject to investment risk and loss that may exceed the principal invested.

Important information about procedures for opening a new account:
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also utilize a third-party information provider for verification purposes and/or ask for a copy of your driver's license or other identifying documents.

| Account Owner(s) must sign. | | |
|---|---|---|
| 8/12/05 | X | ARDITH E FERRIS |
| Date | | Account Number: 0613 |

| For Introducing Broker use only | | |
|---|---|---|
| | R.R. - Gen. Prin. | Date |

| Accepted and Approved by *Ameritrade Clearing* | | |
|---|---|---|
| By: | Date: | |

Account Number: 0613

**END FORM - Terms and Conditions Effective: Tue Jul 19 09:32:49 CDT 2005**

COUNTY OF SACRAMENTO
SUPERIOR COURT OF CALIFORNIA
FAMILY RELATIONS COURTHOUSE

2021 JUN -8 PM 4:27

IN DROP BOX
RECEIVED

EXHIBIT C

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Enforcement Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| *Plaintiff* | ) | |
| v. | ) | Criminal No.   2:11-cr-234-TLN |
| Steven K. Zinnel | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:            David P. Zinnel, 6939 Lisa Marie Way, Carmichael, CA  95608

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

Please see the Subpoena Attachment "A"

| Place: United States Attorney's Office<br>501 I Street, Suite 10-100<br>Sacramento, California 95814 | Date and Time:<br><br>05/04/2020 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   04/06/2020

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | Kurt A. Didier |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Kurt A. Didier
501 I Street, Suite 10-100, Sacramento, CA  95814 (916) 554-2750            , who issues or requests this subpoena, are:
United States of America

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Enforcement Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Attachment "A" to David P. Zinnel Subpoena (U.S. v. Zinnel)**

Unless a document category below specifies a different time range, this subpoena requires you to bring for production (as production is defined on the subpoena's front page), all documents from January 1, 2016 to the present, which refer or relate to:

1.  Your appointment as successor trustee of the Castana Trust;

2.  The Castana Trust and any amendments, changes, modifications thereto from March 1, 2009 to the present;

3.  All schedules of property or assets pertaining to the Castana Trust from March 1, 2009 to the present;

4.  All separate trusts created by the Castana Trust from March 1, 2009 to the present;

5.  Account applications, account statements, withdrawal slips or drafts (front and back), deposit slips (with accompanying deposit items), and cancelled checks pertaining to all bank accounts and other financial accounts the Castana Trust maintains;

6.  Account applications, account statements, withdrawal slips or drafts (front and back), deposit slips (with accompanying deposit items), and cancelled checks pertaining to all bank accounts and other financial accounts maintained by separate trusts created by the Castana Trust;

7.  Deeds, agreements, contracts, and all other documents that evidence the purchase, sale, assignment, transfer, or pledging as collateral of any property belonging to the Castana Trust from March 1, 2009 to the present;

8.  Rent agreements (identifying the current tenants and the lease terms) and rental payment history since September 1, 2016 to the present concerning the property known as 2428 Glenfaire Drive, Rancho Cordova, CA 95670;

9.  Rent agreements (identifying the current tenants and the lease terms) and rental payment history since September 1, 2016 to the present concerning any other income producing property or asset the Castana Trust owns;

1

10.     All documents that evidence the disbursement, payment, or distribution of any Castana Trust property, including, but not limited to, or on behalf of any trust beneficiary from March 1, 2009 to the present;

11.     Invoices, bills, receipts, or other record evidencing payments made by or on behalf of the Castana Trust to maintain trust property;

12.     All state and federal tax returns filed by the Castana Trust for the tax years 2016 to the present;

13.     All documents relating to your brother, Steven Zinnel's, appointment of you to act as his attorney-in-fact;

14.     Bank account applications, bank account statements, withdrawal slips or drafts (front and back), deposit slips (with accompanying deposit items), and cancelled checks pertaining to all bank accounts and other financial accounts you maintain on behalf of Steven Zinnel;

15.     Bank account applications and bank account statements pertaining to retirement and investment accounts and safe deposit box accounts you maintain on behalf of Steven Zinnel;

16.     Articles of incorporation, bylaws, stock certificates, bank account applications and statements, profit and loss statements, dividend and profit sharing distributions, communications with the California Secretary of State's Office and Franchise Tax Board, pertaining to Corporate Controls, Inc.;

17.     All state and federal tax returns you prepared and or filed on behalf of Steven Zinnel for the tax years 2015 to the present;

18.     Deeds, agreements, contracts, and all other documents that evidence the purchase, sale, assignment, lease, transfer, or pledging as collateral of any property belonging to Steven Zinnel that you have transacted on his behalf;

2

19.     Steven Zinnel's will and all amendments and codicils thereto from June 1, 2011 to
the present;

20.     The Zinnel Family Trust and any amendments, changes, modifications thereto
from June 1, 2011 to the present;

21.     All documents that evidence the disbursement, payment, or distribution of any
Zinnel Family Trust property, including, but not limited to, or on behalf of any
trust beneficiary from June 1, 2011 to the present;

22.     All documents that evidence the dissolution or termination of the Zinnel Family
Trust;

23.     Ardith Ferris's will and all amendments and codicils thereto from March 1, 2009
to the present;

24.     All documents that reflect the distribution of Ardith Ferris's estate property to the
Castana Trust from March 1, 2009 to the present;

25.     All documents that reflect the distribution of Ardith Ferris's estate property to
persons or trust entities other than the Castana Trust;

26.     All documents that refer or relate to any inheritance, settlement, judgment,
gambling winnings, insurance claim payments Steven Zinnel received from June
1, 2011 to the present; and

27.     All documents that evidence any debt obligation payable or money due to Steven
Zinnel by you or anyone else.

Please contact the individual listed below to arrange for the transfer of the subpoenaed
documents or for questions:

> Michelle Lecroy
> Paralegal Specialist
> United States Attorney's Office
> 501 I Street, Suite 10-100
> Sacramento, California 95814
> Telephone: (916) 554-2933

If unavailable, please contact:

> Kurt A. Didier
> Assistant U.S. Attorney
> United States Attorney's Office
> 501 I Street, Suite 10-100
> Sacramento, California 95814
> Telephone:  (916) 554-2700

EXHIBIT D

**Tracy Fonti**

| | |
|---|---|
| **From:** | K. Greg Peterson |
| **Sent:** | Thursday, March 4, 2021 9:59 AM |
| **To:** | Didier, Kurt (USACAE) |
| **Cc:** | Lecroy, Michelle (USACAE); Boyd, Kynan (USACAE); Tracy Fonti; Karen Traugh |
| **Subject:** | 20210304 ZIN - status |

Kurt:  The EIN for the Castana Trust is ▇▇▇▇▇.  In case you need it Ardith's SSN is/was ▇▇▇▇▇.  Let me know if you need anything else./Greg

**From:** Didier, Kurt (USACAE) <Kurt.Didier@usdoj.gov>
**Sent:** Wednesday, March 3, 2021 10:49 AM
**To:** K. Greg Peterson <greg@kgregpeterson.com>
**Cc:** Lecroy, Michelle (USACAE) <Michelle.Lecroy@usdoj.gov>; Boyd, Kynan (USACAE) <Kynan.Boyd@usdoj.gov>; Tracy Fonti <tracy@kgregpeterson.com>; Karen Traugh <karen@kgregpeterson.com>
**Subject:** RE: 20210222 ZIN - status

Greg,

Morgan Stanley asked me for the Castana Trust's TIN in order to comply with the U.S.A.'s subpoena.  Please forward it to me.  Thanks, Kurt

**From:** K. Greg Peterson <greg@kgregpeterson.com>
**Sent:** Thursday, February 25, 2021 9:19 PM
**To:** Didier, Kurt (USACAE) <KDidier@usa.doj.gov>
**Cc:** Lecroy, Michelle (USACAE) <MLecroy@usa.doj.gov>; Boyd, Kynan (USACAE) <KBoyd@usa.doj.gov>; Tracy Fonti <tracy@kgregpeterson.com>; Karen Traugh <karen@kgregpeterson.com>
**Subject:** Re: 20210222 ZIN - status

Sounds good, thank you.

Get Outlook for iOS

**From:** Didier, Kurt (USACAE) <Kurt.Didier@usdoj.gov>
**Sent:** Thursday, February 25, 2021 8:09:06 PM
**To:** K. Greg Peterson <greg@kgregpeterson.com>
**Cc:** Lecroy, Michelle (USACAE) <Michelle.Lecroy@usdoj.gov>; Boyd, Kynan (USACAE) <Kynan.Boyd@usdoj.gov>; Tracy Fonti <tracy@kgregpeterson.com>; Karen Traugh <karen@kgregpeterson.com>
**Subject:** RE: 20210222 ZIN - status

Greg,

The United States appreciates Mr. David Zinnel's cooperation.

I attached copies of the subpoenas to Morgan Stanley and TD Ameritrade as a courtesy and understand your position concerning any assets related to Mrs. Ferris' estate that the responsive documents may reveal.  The United States will not levy against assets for which it has no legal claim.  I will reach out to you once I see the subpoenaed documents.  Regards, Kurt

1

**From:** K. Greg Peterson <greg@kgregpeterson.com>
**Sent:** Monday, February 22, 2021 5:55 PM
**To:** Didier, Kurt (USACAE) <KDidier@usa.doj.gov>
**Cc:** Lecroy, Michelle (USACAE) <MLecroy@usa.doj.gov>; Boyd, Kynan (USACAE) <KBoyd@usa.doj.gov>; Tracy Fonti <tracy@kgregpeterson.com>; Karen Traugh <karen@kgregpeterson.com>
**Subject:** 20210222 ZIN - status

Kurt: Thank you for your email. Sorry for just getting back to you but I was out on Friday. Anyway, I was hopeful that your client would appreciate the cooperation coming from my client.

Technically, under CCP §1985.3 I do believe securities account records of the brokerage firms do qualify as "personal records" of a "consumer." For that reason I believe my client, as his mother's legal representative, is entitled to notice and for that reason I request that you serve me with copies of the subpoenas.

At this point I do not envision that my client will object to the subpoenas we suggested. On the other hand, I do not want my client's knowledge of the subpoenas to be construed as a waiver of any rights my client has to any of the assets of his mother's estate, and should you end up locating monies held or formerly held in brokerage accounts under his mother's name we will obviously want to examine that question.

We are short on information at this point and there is still much to sort out, but I hope the cooperation regarding the exchange of information will cut both ways if there is anything to talk about. Let me know and thanks again./Greg Peterson


**From:** Didier, Kurt (USACAE) <Kurt.Didier@usdoj.gov>
**Sent:** Thursday, February 18, 2021 8:19 PM
**To:** K. Greg Peterson <greg@kgregpeterson.com>
**Cc:** Lecroy, Michelle (USACAE) <Michelle.Lecroy@usdoj.gov>; Boyd, Kynan (USACAE) <Kynan.Boyd@usdoj.gov>; Tracy Fonti <tracy@kgregpeterson.com>; Karen Traugh <karen@kgregpeterson.com>
**Subject:** RE: 20210125 ZIN - status

Hi Greg,

Tomorrow, we will serve subpoenas on Morgan Stanley, et al., and TD Ameritrade, subject above. I appreciate your outreach about the United States issuing the subpoenas. The subpoenas are appropriate as the potential information derived therefrom are relevant to the government's efforts to enforce Mr. Steven Zinnel's unpaid criminal judgment.

I had to consider whether to serve you, care of Ardith Ferris aka Ardith Zinnel, with a third party right to financial privacy notice regarding the subpoenas and an opportunity to object to them. I concluded I do not because the brokerage accounts, if they still exist, are in decedent Ardith Ferris' name, and because you, as counsel for the Castana Trust and David Zinnel, successor trustee, asked the United States for assistance in subpoenaing the brokerage account information. If you disagree with my conclusion, please let me know so we can discuss it further.

The return date on the subpoenas is March 12, 2021. I will contact you once I have reviewed the documents Morgan Stanley and TD Ameritrade produce. Thank you, Kurt

**Kurt A. Didier | Assistant U.S. Attorney | Eastern District of California**
Robert T. Matsui United States Courthouse | 501 I Street, Suite 10-100 | Sacramento, CA 95814
*t* 916/554-2750 | *f* 916/554-2900

**From:** K. Greg Peterson <greg@kgregpeterson.com>
**Sent:** Monday, January 25, 2021 11:15 AM
**To:** Didier, Kurt (USACAE) <KDidier@usa.doj.gov>
**Cc:** Lecroy, Michelle (USACAE) <MLecroy@usa.doj.gov>; Tracy Fonti <tracy@kgregpeterson.com>; Karen Traugh <karen@kgregpeterson.com>
**Subject:** 20210125 ZIN - status

Good morning Kurt. Could you give me a call or shoot me an email concerning your thoughts regarding subpoenaing the brokerage accounts (or not)? Obviously, what you decide to do will affect our timing regarding a settlement, petition to approve, etc. Thanks/Greg Peterson